**UNITED STATES of America,
ex rel., Plaintiff,**

**and**

**Linda A. LUJAN, Plaintiff–Appellant,**

v.

**HUGHES AIRCRAFT CO.,
Defendant–Appellee.**

No. 94–55153.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 1, 1995.

Decided Sept. 29, 1995.

Daniel I. Davidson, Spiegel & McDiarmid, Washington, DC, for plaintiff-appellant.

Fred D. Heather, McKenna & Cuneo, Los Angeles, California, for defendant-appellee.

Before: FLETCHER, BRUNETTI, and T.G. NELSON, Circuit Judges.

BRUNETTI, Circuit Judge:

Linda Lujan appeals the dismissal of her *qui tam* and retaliation claims brought pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.* (1983 & Supp.1994) (FCA), against her former employer, Hughes Aircraft Company. The district court dismissed Lujan's complaint because Lujan disclosed the nature and existence of her *qui tam* claim to the *Los Angeles Times* while the complaint was still under seal pursuant to § 3730(b)(2). We have jurisdiction, *see* 28 U.S.C. § 1291, and reverse.

## I.

On February 28, 1992, Lujan brought a *qui tam* action against Hughes under the False Claims Act. Pursuant to § 3730(b)(2), Lujan filed her claim *in camera*, and served it on the Government along with the requisite written disclosure of information. The complaint alleged that Hughes had mischarged the Government for its work on the B–2 radar systems. Lujan's complaint also contained a second cause of action alleging wrongful discrimination and retaliatory termination under § 3730(h).

Prior to filing her *qui tam* claim, Lujan had made similar allegations of improper conduct by Hughes in a wrongful termination

suit and in a workers' compensation action. On December 16, 1991, over ten weeks before the filing of her *qui tam* complaint, Lujan was deposed in connection with her wrongful termination suit. During Lujan's deposition, Hughes' attorney, Mr. Stockman, questioned Lujan extensively about the basis of her forthcoming *qui tam* claim and its relationship to the allegations of her wrongful termination claim. For example, Hughes' attorney justified one question about her *qui tam* claim by arguing that his question was relevant "because it is reasonably calculated to lead to the discovery of admissible evidence, in that she is basing her *qui tam* action to a large extent upon the same facts that she is basing this action."

On April 3, 1992, after she had filed her *qui tam* claim and while it was still under seal, but before Hughes had been served with the complaint, an article appeared in the *Los Angeles Times*. The article reported that Lujan had filed a *qui tam* claim and disclosed the existence and general nature of allegations contained in her complaint. Specifically, the article stated that "Hughes allegedly inflated its profits by billing costs on jet fighter radar programs to the B–2 contract and shifting costs between different phases of the program[.]"

A few weeks later, a companion story appeared in the *Times*. The second article again recited the facts of Lujan's suit and quoted Mr. Tom Peirce, a former Hughes' ethics administrator who claimed to have investigated Lujan's allegations. The article noted that "[Hughes] officials are aware of Lujan's general allegations, because they resemble those made in a 1989 suit filed by William Schumer, the former Hughes director of contracts for the B–2."

Following the appearance of the second newspaper article, Hughes filed under seal a motion to dismiss the complaint for failure to comply with the seal provision. The court continued the hearing until after service of the complaint on Hughes.

Lujan then filed under seal a First Amended Complaint. Pursuant to 31 U.S.C. § 3730(b)(3) & (4) [1] the Government obtained extensions of the seal beyond the date originally set by the court. Upon completion of its investigation of Lujan's *qui tam* claims, the Government notified the court that it would not intervene. On April 23, 1993, the district court ordered that the seal be lifted and the complaint be served on Hughes. Subsequently, Hughes filed a second notice of hearing in connection with its previously filed motion to dismiss. The district court granted Hughes' motion, and Lujan timely appeals.

## II.

■ Lujan clearly violated the seal provision of 31 U.S.C. § 3730(b)(2) [2] by making statements to the *Los Angeles Times* about the existence and nature of her *qui tam* suit. Any suggestion that her disclosure to a major newspaper is not a violation of the seal provision cannot be taken seriously. The critical issue we must consider is whether dismissal of Lujan's *qui tam* action is the appropriate remedy for that violation.

The district court did not explain on what authority it rested its decision to dismiss. There are only two possible sources for authority on which the district court could have

---

1. Section 3730(b) provides in pertinent part:

   (3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal[.] ...

   (4) Before the expiration of the 60–day period or any extensions obtained under paragraph (3), the Government shall—

   (A) proceed with the action, in which case the action shall be conducted by the Government; or

   (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

2. Section 3730(b)(2) provides:

   A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

relied: the False Claims Act, or the district court's inherent power to dismiss as a sanction. We address these issues in turn.

### A. Statutory Basis for Dismissal

██ We review the district court's interpretation of the FCA de novo. See Stephens v. City of Vista, 994 F.2d 650, 655 (9th Cir. 1993).

No provision of the False Claims Act explicitly authorizes dismissal as a sanction for disclosures in violation of the seal requirement. Hughes contends, and the district court seems to have decided, that the authorization for dismissal of complaints is implicit in the purpose of the seal requirement. We find that the district court's analysis of the purpose of the seal was erroneous. Consequently, its dismissal of Lujan's complaint cannot be justified by reliance on the FCA.

By providing for the seal provision, Congress intended to strike a balance between "the purposes of qui tam actions [and] … law enforcement needs[.]" S.Rep. No. 345, 99th Cong., 2d Sess. 24, reprinted in 1986 U.S.C.C.A.N. 5266, 5289. The purpose of qui tam actions is to encourage more private false claims litigation. See id., reprinted in 1986 U.S.C.C.A.N. at 5288. The other side of the balance recognizes the need

> to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action.

Id., reprinted in 1986 U.S.C.C.A.N. at 5289. The seal provision provides an appropriate balance between these two purposes by allowing the qui tam relator to start the judicial wheels in motion and protect his litigative rights, while allowing the government the opportunity to study and evaluate the relator's information for possible intervention in the qui tam action or in relation to an overlapping criminal investigation. Id.

██ When the seal provisions are violated, this balance cannot be disregarded. The requirements of § 3730(b)(2) are not jurisdictional, and violation of those requirements does not per se require dismissal of the qui tam complaint. See United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995, 1000 (2d Cir.1995) (expressing reluctance to rule that the requirements of § 3730(b)(2) are jurisdictional). Rather, the district court must keep in mind both sides of the balance when constructing a sanction for a violation of the seal provision. In this case, when the district court sanctioned Lujan for violating the seal provision, it failed to consider this balance and instead concluded ipso facto that once a violation was found, dismissal was appropriate. Several factors should have given the district court reason to pause before deciding dismissal was appropriate.

First, the district court failed to consider whether the Government was actually harmed by Lujan's disclosure. Courts that have previously addressed this issue and found dismissal appropriate have relied, at least in part, on the irreparable harm to the government caused by the complete failure to abide by any of the seal provisions, including failure to serve the government with a copy of the complaint. In Pilon, the court found that the violation "incurably frustrated the statutory purposes underlying [the seal] requirements[.]" Id. at 996. Similarly, in Erickson ex rel. United States v. American Inst. of Bio. Sciences, 716 F.Supp. 908 (E.D.Va.1989), the court rested its holding on its finding that "Erickson's failure to comply with the filing and service provisions irreversibly frustrates the congressional goals underlying those provisions." Id. at 912 (emphasis added).

The mere possibility that the Government might have been harmed by disclosure is not alone enough reason to justify dismissal of the entire action. The district court should have assessed whether and to what extent the government was harmed before sanctioning Lujan with dismissal.

We have reason to doubt whether the Government actually suffered any harm in this case. Both parties refer in their briefs to Hughes' deposition of Lujan in her state court proceedings; the deposition took place before her qui tam case was filed and before any seal existed. The deposition transcript excerpts presented by Lujan indicate

Hughes was aware of Lujan's intent to file a *qui tam* action and of the nature of her allegations. In light of the fact that Lujan's disclosure to the *Times* gave only general descriptions of her claims in contrast to the very detailed answers Lujan gave Hughes' attorney during her deposition, there is a strong inference that Hughes did not learn anything from the *Times* articles that it did not already know. If Hughes learned nothing from the *Times* articles, then the articles alone could not have prompted any action by Hughes, and the Government's investigation could not have been hampered by the articles. *But see Pilon,* 60 F.3d at 999 ("That the government and Defendants may have been aware of the substance of the Pilons' allegations does not diminish the consequences of the Pilons' failure to comply with the statutory requirements.").

Although we are inclined to think that the articles did not harm the Government's investigation, we are not in a position to draw any final conclusion from this record. The district court will have to make the final determination on remand.

In making its determination, the district court will have to consider the Statement of the United States Regarding Defendant's Motion to Dismiss the Complaint, which stated:

> [W]hile the United States has not claimed in this case that it was prejudiced by the public disclosure of the *qui tam* allegations prior to the lifting of the seal, it is not in a position to state[,] as a factual matter, that it was not prejudiced by such disclosure. It is difficult, if not impossible, to determine what actions may have been taken by the defendant based upon its knowledge of the investigation.

As this Statement indicates, it would be impossible to determine what actions Hughes might have taken when it originally learned of Lujan's *qui tam* action. However, if Hughes' knowledge of the investigation predated Lujan's breach of the seal, and was in no way enhanced by Lujan's disclosure to the *Times,* then it would be illogical to assume that Hughes took any actions based on the *Times* articles. The district court will have to evaluate the Government's Statement in

light of Hughes' pre-filing knowledge of the claim.

A second factor the district court must weigh against congressional intent to promote litigation through *qui tam* claims is the nature of the violation. Lujan violated § 3730(b)(2) by disclosing the existence and nature of her *qui tam* complaint in very general terms to the *Los Angeles Times.* Lujan complied with all the other requirements of § 3730(b)(2) by filing her complaint *in camera* and serving it on the Government along with a written disclosure of information. The violation of the seal provision in this case is qualitatively different than the violations in cases that have found dismissal was an appropriate sanction. For example, in *Erickson,* the relator *completely* failed to comply with *any* of the requirements of § 3730(b)(2). *Erickson,* 716 F.Supp. at 911. Similarly, in *Pilon,* counsel failed to file the complaint *in camera,* failed to serve the United States with a copy of the complaint and a written disclosure of the underlying evidence, and, several hours after filing, arranged for an extensive interview with a reporter. *Pilon,* 60 F.3d at 997. When evaluating the appropriate sanctions, the district court cannot disregard the relative severity of the violation.

A third factor to be weighed in determining whether dismissal is appropriate is the presence or absence of bad faith or willfulness. In this case there is no finding that Lujan's disclosure was made in bad faith. In fact, nothing in the record indicates whether the disclosures occurred. The only evidence we find are the articles themselves, which merely indicate Lujan and her attorney "said" certain things. It may be logical in this case to infer that Lujan willfully breached the seal provisions, especially in the absence of any representation to the contrary. However, in other cases, when the presence or absence of bad faith or willfulness cannot be inferred, district courts must inquire into those matters in order to make an informed determination of whether dismissal is warranted, or whether some lesser sanction is sufficient. *See Pilon,* 60 F.3d at 999 ("The record reveals ... a considerable lack of good faith.").

Before concluding, we address one factor relied on by the district court that is not one of the statutory purposes of the seal provision, and therefore is not relevant in determining whether a particular seal violation warrants dismissal under the FCA. The district court based its decision in part on its inference that Congress enacted the seal provision to "protect[ ] defendants from damaging attacks to which they are unable to respond." This analysis is erroneous.

The Committee's only documented concern regarding defendants' interests was that it avoid the pre-amendment possibility that defendants might be required to answer a complaint two days after service, without knowing whether its opponent would be the Government or a private litigant.[3] S.Rep. No. 345, 99th Cong., 2d Sess. 24, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289. This was the only interest to which the Committee referred when it commented that "sealing the initial private civil false claims complaint protects both the Government and the defendant's interests without harming those of the private relator." *Id.* Never did the Committee discuss, let alone imply that it sought to protect, the types of potential unfairness relied on by Hughes and the district court. To the contrary, the Committee explicitly stated that "[b]y providing for sealed complaints, the Committee does not intend to affect defendants' rights in any way." *Id.* For these reasons, protecting the rights of defendants is not an appropriate consideration when evaluating the appropriate sanction for a violation of the seal provision.[4]

Our holding today will require district courts to explore the facts underlying violations of the seal requirements before concluding that the extreme sanction of dismissal is warranted. However, the findings we require district courts to make are no more onerous than those required when district courts dismiss under their inherent powers. More importantly, those findings are necessary to give full effect to the balance Congress sought to strike when it enacted the seal provisions.

### B. Dismissal as an Exercise of Inherent Powers

■ We now consider whether the district court's dismissal of Lujan's complaint can be justified as a proper exercise of its inherent power to sanction. *See Halaco Engineering Co. v. Costle,* 843 F.2d 376, 380 (9th Cir. 1988). Imposition of dismissal as a sanction is reviewed for abuse of discretion. *Id.* at 379. Factual findings upon which the district court relied are reviewed for clear error. *Id.*

■ Although district courts have the inherent power to dismiss an action as a sanction, in so doing the court must consider the following:

(1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake.

*Id.* at 380. We need not address all of these factors, because the district court failed to explicitly consider the possibility of lesser sanctions. To satisfy this requirement, the district court had to provide a reasonable explanation of possible and meaningful alternatives. *See id.* at 381. Failure to *explicitly consider* less drastic sanctions is a fatal flaw in the district court's decision to dismiss as a sanction, and consequently, its decision can-

---

**3.** As amended, § 3730(b)(3) provides that "[t]he defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant...."

**4.** We do not mean to imply that harm to the defendant is never a relevant consideration when district courts are assessing possible sanctions for failure to comply with seal requirements. As discussed below, harm to the defendant is an appropriate consideration when the district court dismisses under its inherent powers. *See infra* II.B. We simply find that there is no support either in the text or the legislative history to find that it was one of the interests Congress sought to protect. *Accord Pilon,* 60 F.3d at 999 (suggesting that "other interests not addressed by [the] legislative history" include "a defendant's reputation[.]").

not be viewed as a proper exercise of its inherent power to dismiss as a sanction.[5] *See id.*

## III.

On remand, before it can reach the merits of Lujan's claims, the district court will also have to consider whether it has jurisdiction. *See Wang v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir.1992).

■ Section 3730(e)(4)(A) of the False Claims Act circumscribes district courts' jurisdiction in *qui tam* actions by barring suits brought after the allegations in the complaint have been publicly disclosed, unless the relator is the "original source" of the information.[6] In other words, "[t]o bring a *qui tam* suit, one must have had a hand in the public disclosure of allegations that are a part of one's suit." *Wang*, 975 F.2d at 1418.

On appeal, it came to the attention of this court that the allegations in Lujan's complaint resemble the subject of an earlier *qui tam* brought in 1989 by William Schumer, the former Hughes director of contracts for the B-2. *See United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512 (9th Cir.1995). Whether the information in Lujan's complaint had already been publicly disclosed through Schumer's action depends on factual findings "that must be made by the district court in the first instance[.]" *United States v. Northrop Corp.*, 5 F.3d 407, 409 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1543, 128 L.Ed.2d 195 (1994). On remand, therefore, the district court must make the appropriate factual inquiry to determine whether the allegations in Lujan's complaint were publicly disclosed by Schumer.

## IV.

The district court's dismissal of Lujan's complaint is REVERSED and the case is REMANDED for further proceeding in accord with this opinion.

---

5. Since we hold that dismissal of Lujan's entire complaint was inappropriate, we need not address Lujan's separate contention that dismissal of her personal claim pursuant to § 3730(h) was inappropriate.

6. 31 U.S.C. § 3730(e)(4) specifically provides:
   (A) No court shall have jurisdiction over an action ... based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless ... the person

bringing the action is an original source of the information.
(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.