UNITED STATES of America, Plaintiff,

v.

**Robert B. FISKE, Jr.,Defendant.**

**No. LR–C–96–783.**

United States District Court,
E.D. Arkansas,
Western Division.

April 10, 1997.

---

David W. Long, U.S. Dept. of Justice Civil Div., Washington, DC, G. Randolph Satterfield, Satterfield Law Firm, Little Rock, AR, for U.S.

G. Randolph Satterfield, Satterfield Law Firm, Little Rock, AR, for movant.

---

### ORDER GRANTING MOTION TO DISMISS

EISELE, District Judge.

Before the Court are the United States of America's Suggestion of Dismissal and Motion to Dismiss and G. Randolph Satterfield's Responses and his Petition for Evidentiary Hearing. The Court has reviewed the submissions of the parties, and, for the reasons set forth in this Order, the Court will grant the Motion to Dismiss and deny the Petition for Evidentiary Hearing.

## I

The Attorney General of the United States appointed Defendant Robert B. Fiske, Jr. (hereinafter "Defendant"), as independent counsel in what is widely known as the Whitewater investigation on January 31, 1994. Defendant served in that capacity until Mr. Kenneth W. Starr replaced him on August 5, 1994. During his tenure, Defendant remained a member of the New York law firm Davis, Polk & Wardwell on an uncompensated leave of absence status and participated in certain firm benefit plans at his own expense.

On October 1, 1996, Mr. Satterfield filed this action, citing the *qui tam* provisions of the False Claims Act (hereinafter the "FCA"). *See* 31 U.S.C. § 3730(b). The case fell by random assignment to the docket of the Hon. William R. Wilson, Jr. The FCA's *qui tam* provisions, upon which Mr. Satterfield relies, allow certain private parties, or relators, to bring suit on behalf of the United States for the submission of false claims to the federal government. *See* 31 U.S.C. §§ 3729 and 3730(b). Specifically, Mr. Satterfield alleges that Defendant claimed compensation for his services and expenditures pursuant to a statute that was no longer in effect, and he asserts that Defendant failed to disclose the representation of Prudential–Bache Securities by Defendant's firm, in spite of the fact that his role as independent counsel would require him to investigate Prudential. Thereby, according to Mr. Satterfield, Defendant submitted false claims to the federal government and exposed himself to liability under the FCA.

On October 21, 1996, the United States filed its Suggestion of Dismissal. The United States argues, first, that Mr. Satterfield failed to file his Complaint in accordance with the requirements of the FCA and, second, that Mr. Satterfield filed his Complaint in the name of the United States, purporting to conduct litigation on behalf of the United States when he was unauthorized to do so. Therefore, according to the United States, the Court should dismiss the Complaint.

On October 22, 1996, Judge Wilson recused from the case. After Judge Wilson recused,

the case came to this docket by random assignment.

On November 4, 1996, Mr. Satterfield filed his Response to Suggestion of Dismissal and Praecipe. Mr. Satterfield urges that the alleged defects in the pleadings constitute neither a basis for dismissal nor affirmative defenses. He submits that they are clerical errors that have frustrated none of the goals advanced by the relevant requirements. Mr. Satterfield affirmatively states that he advised the clerk to file the case in accordance with the requirements but that the clerk "decided" not to follow his instructions. Finally, Mr. Satterfield submits that the Court should construe the United States' Suggestion as an election not to intervene in the suit.

The United States timely provided its Notice of Election to Intervene and its Motion to Dismiss on December 13, 1996. In support of its Motion, the United States argues that the Attorney General's power to control litigation on behalf of the United States encompasses the dismissal of a complaint filed under the *qui tam* provisions of the FCA. Moreover, according to the United States, the exercise of that power is particularly appropriate where, as in the instant case, the allegations in the complaint are meritless.

Mr. Satterfield filed his Petition for Evidentiary Hearing and his response to the United States' Motion to Dismiss on January 21, 1997. Mr. Satterfield argues that the Court should not allow the United States to dismiss the case "since it was the Department of Justice which assisted Mr. Fiske in proceeding without statutory authority, approved his compensation and expenses without statutory authority and with full knowledge of his representation of corporate clients." Essentially, Mr. Satterfield argues that the Department of Justice itself has a conflict of interest in representing the United States in this matter. The United States replied on January 31, 1997.

On March 26, 1996, the Court noted via facsimile a hearing on April 7, 1997, in Little Rock. In that letter, the Court advised the parties that the Court expected to deal primarily with three issues at the hearing: (1) whether the fact that the filing requirements of the *qui tam* provisions of the FCA were not satisfied in this case mandates dismissal of the complaint; (2) whether the complaint states a claim under the FCA upon which the Court could grant relief; and (3) whether the Court enjoys discretion in deciding whether to dismiss a *qui tam* suit upon the request of the Government.

On Monday, April 7, 1997, the Court heard argument on the record and in open court. During the hearing, the Court directed the Government to provide for the Court's consideration certain correspondence between Defendant and Deputy Assistant Attorney General Janis Sposato. On April 9, 1997, the Government provided that correspondence and, as an attachment thereto, a memorandum from Defendant to Principal Associate Deputy Attorney General Irvin Nathan. The Court directs that the Government's submissions be made a part of the record herein.

## II

The Court has considered the parties' arguments and determined that the Court should dismiss the case for the following reasons: (1) the failure of the Complaint to state a claim under the FCA upon which the Court may grant relief and (2) the United States' desire to dismiss the case. It is the opinion of the Court that each of these factors provides sufficient justification on its own for dismissing the instant lawsuit. Before discussing these two issues, the Court feels that it is important to discuss a third issue raised by the Suggestion of Dismissal filed by the Government on October 21, 1996, *i.e.*, the failure of Mr. Satterfield to comply with the procedural requirements of the FCA, even though the Government at the April 7 hearing indicated that it did not want to pursue that issue. The Court would be obligated to deal with this issue even if the Government had not filed the Suggestion of Dismissal.

### *Failure to File the Complaint Under Seal*

#### 1. *The Relevant Law*

The FCA details certain procedural requirements that a *qui tam* plaintiff must observe:

A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. *The complaint shall be filed in camera, shall remain under seal for at least 60 days,* and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2) (emphasis added). Congress passed the filing and service requirements as part of its 1986 revisions of the FCA. *See United States ex rel. Pilon v. Martin Marietta Corp.,* 60 F.3d 995, 998 (2d Cir.1995) (discussing purposes of requirements). Those revisions, in general, sought to "enlist the aid of the citizenry in combatting the rising problem of 'sophisticated and widespread fraud.'" *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 745 (9th Cir.1993), *cert. denied,* 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994) (quoting S.Rep. No. 345, 99th Cong., 2d Sess. 23–24, *reprinted in* 1986 U.S.C.C.A.N. 5267, 5288–89).

Although Congress amended the *qui tam* provisions to encourage private enforcement suits, the filing and service requirements protect against certain dangers inherent in such suits. *See Pilon,* 60 F.3d at 998 (citing S.Rep. No. 345, 99th Cong., 2d Sess. 23–24, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5288). *Qui tam* claims risk overlapping with ongoing criminal investigations and tipping defendants off to such investigations, and the sixty-day sealing period and the requirement that the Government but not the defendant be served should provide the United States with an opportunity to review the suit and to determine whether to intervene. *See id.; see also United States ex rel. Lujan v. Hughes Aircraft Co.,* 67 F.3d 242, 245 (9th Cir.1995) (discussing intent of seal provision). Moreover, these requirements "prevent defendants from having to answer complaints without knowing whether the government or relators would pursue the litigation." *Pilon,* 60 F.3d at 999. The United States Court of Appeals for the Second Circuit has suggest-ed, furthermore, that the filing and service requirements protect defendants' reputations to some degree by making public the United States' decisions not to intervene and thereby flagging some meritless allegations. *See id.; but see Lujan,* 67 F.3d at 247 (concluding that "protecting the rights of defendants is not an appropriate consideration when evaluating the appropriate sanction for a violation of the seal provision" and citing legislative history). Finally, according to the Second Circuit Court of Appeals, the filing and service requirements encourage the settlement of meritorious claims to avoid the unsealing. *See Pilon,* 60 F.3d at 999.

### 2. *Discussion*

■ The instant *qui tam* action was not filed under seal, and the Court, therefore, must determine the effect of that defect. "In general, a party pursuing a statutory remedy must comply with all the procedures the statute mandates." *Erickson v. American Institute of Biological Sciences,* 716 F.Supp. 908, 911 (E.D.Va.1989) (citing *United States ex rel. Texas Portland Cement Co. v. McCord,* 233 U.S. 157, 162, 34 S.Ct. 550, 552, 58 L.Ed. 893 (1914)). The Eighth Circuit Court of Appeals has offered no guidance on the proper result with regard to this issue, and the Court, therefore, has looked to other circuits. Although the Court does not necessarily agree, the weight of persuasive authority suggests that the filing and service requirements of § 3730(b)(2) are not jurisdictional and that determining the effect of a failure to comply with those requirements requires a balancing of factors.

Some courts have held that the filing and service requirements are jurisdictional and thereby have avoided weighing whether failure to satisfy those requirements frustrated congressional intent. *See, e.g., Friedman v. Federal Deposit Insurance Corp.,* 1995 WL 608462, *3 (E.D.La.1995) (agreeing with Government's assertion that *in camera* filing requirement is jurisdictional and that defects, therefore, warrant dismissal). That approach, however, conflicts with the direction taken by other courts. The parties in *Pilon* pressed the Second Circuit Court of Appeals to render its decision on the ground of sub-

ject-matter jurisdiction. *See Pilon*, 60 F.3d at 1001 n. 4. In reaching its conclusion, however, the court declined to address whether the filing and service requirements of § 3730(b)(2) are jurisdictional in nature, opining that such a determination was not essential to the resolution of the issue before it. *See id.* (expressing reluctance to find that requirements are jurisdictional). The United States Court of Appeals for the Ninth Circuit has held explicitly that the filing and service requirements are not jurisdictional requirements. *See Lujan*, 67 F.3d at 245 (interpreting dismissal as sanction and requiring balancing of factors); *see also United States ex rel. Mikes v. Straus*, 931 F.Supp. 248, 259 (S.D.N.Y.1996) (citing *Pilon* and holding requirements not jurisdictional). This Court assumes without deciding that the filing and service requirements are not jurisdictional.

In *Pilon*, the plaintiffs did not file their complaint *in camera* or file a notice of motion. *See Pilon*, 60 F.3d at 996. Their complaint did not suggest that the clerk should file it under seal, and the plaintiffs did not submit it in a sealed envelope. One plaintiff asserted that he told the clerk that he wanted to file a *qui tam* action and that he understood that filing requirements existed. The clerk, however, appeared confused, and counsel did nothing further to assure that the clerk would file the complaint under seal. Counsel then arranged for an interview between his clients and a local reporter, and a news article which revealed the substance of the complaint resulted. *See id.* at 997. The Second Circuit Court of Appeals found that all of the statutory goals of the filing and service requirements had been flouted. *See id.* at 999. The fact that the United States and the defendant knew the substance of the plaintiff's allegation did not, in the court's view, "diminish the consequences of the ... failure to comply with the statutory requirements." *Id.* The court also noted that the record revealed a lack of good faith on the part of plaintiffs' counsel. *Id.* The court upheld the district court's dismissal of the complaint but modified the decision to dismiss the claims with prejudice. *Id.* at 996.

In *Lujan*, the Ninth Circuit Court of Appeals held that the Court must consider "whether and to what extent the government was harmed before sanctioning [Mr. Satterfield] with dismissal." *Lujan*, 67 F.3d at 245.[1] According to the Ninth Circuit, the Court "cannot disregard the relative severity of the violation." *Id.* at 246. In *Lujan*, the Ninth Circuit panel considered a situation where the plaintiff "violated § 3730(b)(2) by disclosing the existence and nature of her *qui tam* complaint in very general terms to the *Los Angeles Times*. [She] complied with all the other requirements of § 3730(b)(2) by filing her complaint *in camera* and serving it on the Government along with a written disclosure of information." *Id.* The court distinguished that situation from *Erickson* and from *Pilon*. In *Erickson*, the court noted, the plaintiff complied with none of the requirements of § 3730(b)(2). *See id.* In *Pilon*, "counsel failed to file the complaint *in camera*, failed to serve the United States with a copy of the complaint and a written disclosure of the underlying evidence, and, several hours after filing, arranged for an extensive interview with a reporter." *Id.* The *Lujan* court reversed and remanded the case to the district court to make the required factual inquiries to determine whether dismissal was an appropriate sanction. *See id.* at 248

The defects in the instant case fall on a continuum somewhere between the defects described in *Lujan* and the defects described in *Pilon*. Here, the Court discerns no evidence of bad faith on Mr. Satterfield's part, and, as the United States acknowledges, it was served with a copy of the Complaint and related materials on October 16, 1996. Moreover, the United States does not articulate with particularity the harm that it suffered. However, Mr. Satterfield did not file his Complaint under seal or *in camera*, and he did not, therefore, afford the United States sixty days to evaluate his allegations and to determine whether to intervene. Mr. Satterfield represents to the Court that he advised the district court

---

1. The Ninth Circuit panel also indicated that the Court could dismiss a complaint for failure to satisfy the requirements of § 3730(b)(2) as an exercise: of its inherent power to sanction. *See Lujan*, 67 F.3d at 247.

clerk's office to file the Complaint under seal and that the clerk "decided" not to do so. However, Mr. Satterfield, a lawyer, apparently failed to insist that the clerk file the Complaint under seal and failed to seek an order from a federal judge directing the clerk to do so. It is the opinion of the Court that allowing the clerk to file a complaint in violation of clear statutory requirements because the clerk "decided" to disregard a verbal request is an unreasonable response from a licensed attorney. In this case, as a result of the failure to file the Complaint under seal, Judge Wilson's recusal order became the subject of at least one newspaper article which made Mr. Satterfield's Complaint public.

Since the Court has concluded, on balance, that Mr. Satterfield's failure to comply with the procedural requirements of the FCA does not deprive it of jurisdiction, the Court will not, in light of the Government's waiver of this issue, go on to determine whether the violations of the filing requirements of § 3730(b)(2) were sufficiently egregious to independently warrant dismissal. Instead, the Court will turn to the remaining issues.

### Failure to State a Claim Upon Which the Court May Grant Relief

#### 1. *The Relevant Law*

Section 3730(b)(2) allows private parties to bring suit on behalf of the Government and themselves for violations of § 3729. Section 3729(a) provides, *inter alia*, that

[a]ny person who—

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval ...

is liable to the United States Government for a civil penalty....

Section 3729(b) defines *knowing* and *knowingly* as follows:

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

Finally, § 3729(c) defines *claim* as

any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested demanded.

#### 2. *Discussion*

■ It is entirely unclear to the Court, accepting Mr. Satterfield's allegations as true, how it can reasonably be argued that Defendant submitted a false or fraudulent claim to the United States Government, a predicate for liability under the FCA. Mr. Satterfield states that "the payment of compensation and expenses billed by the Defendant to the Federal Government was a submission of a false claim to the Federal Government ... since there was no legal basis for his compensation under the expired Act." Complaint at ¶ 8. The United States appointed Defendant and thus represented to him that he would be paid his salary. The Court cannot reasonably divine from Mr. Satterfield's Complaint any basis for the contention that Defendant knowingly presented a false claim intending to defraud the United States simply by accepting his agreed-to compensation. Nowhere in the submissions before the Court does Mr. Satterfield allege that Defendant made any misrepresentation, or submitted anything to the Government, that would have deceived the Government. The Court recognizes the fact that "the relevant government officials know of the falsity is not in itself a defense." *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1421 (9th Cir.1991). However, it is obvious that Mr. Satterfield's fundamental argument is with the Department of Justice itself, not with Defendant. Mr. Satterfield is left in the odd position of arguing that the Department of Justice—a

party which Mr. Satterfield has not sued—defrauded itself.[2]

It is clear from the record that the United States knew about Defendant's representation of Prudential when it paid him. By memorandum dated March 31, 1994, from Defendant to Deputy Assistant Attorney General Sposato, Defendant indicated that he had "decided to follow the recommendation of Stephen D. Potts, Director of the Office of Government Ethics, that your Office provide the initial ethics opinion with respect to the Prudential–Bache/International Paper situation, which then would be reviewed by his Office." The memorandum continues as follows:

> I am enclosing a copy of a letter which I sent Irvin Nathan on February 15, 1994, which lays out the facts relating to International Paper and Prudential–Bache. International Paper has been a client of Davis Polk for many years, although I can only recall one matter I personally handled for them: a case which was settled during trial, several years ago. Prudential–Bache—more recently known as Prudential Securities—has been a client of Davis Polk's for about ten years. I have done a great deal of work for them, and at the time I accepted this appointment, I was in charge of their representation in a major grand jury investigation in the Southern District of New York involving the sale of limited partnerships.

> I see no reason why I cannot participate in the part of the investigation that involves International Paper, so long as its status continues to be nothing more than a witness.

> With regard to Prudential–Bache, as noted in my letter to Irvin Nathan, the decision not to indict Prudential–Bache in the *Hale/Matthews/Fitzhugh* case had already been made twice—first by Paula Casey's Office and separately by Don McKay and his team—before I was appointed. No new facts relating to Prudential–Bache have been developed, but I have asked other lawyers in the Office to make

the decision whether any charges should be brought against the firm.

> It would be my intention, as this investigation goes forward, to recuse myself from any part of it that involves any Davis Polk client which becomes involved in the investigation as anything other than a witness.

On April 8, 1994, Assistant Attorney General for Administration Stephen R. Colgate responded by memorandum to Defendant. Assistant Attorney General Colgate concluded that Defendant's "full participation in these matters is both appropriate and desirable." The April 8, 1994, memorandum reads, in part, as follows:

> Analysis:

> The standards of ethical conduct for employees of the Executive Branch contain provisions designed to ensure impartiality in performing official duties. In a situation where your law firm did represent a party to a matter, the standards state that you should seek a determination from your agency about the propriety of your participation in that matter. 5 CFR § 2635.502. Such a determination is to be made by considering factors that balance the degree of actual or apparent conflict with the government's need for the services of the particular employee.

> In this case, your law firm will not be representing anyone with respect to the Whitewater matter. Nonetheless, as a matter of prudence I have considered the matter under the standards of Section 502 and it is my determination that your full participation is both necessary and appropriate. In balancing the relevant factors I was particularly impressed by the fact that you were appointed to handle this single and very sensitive matter because of your personal skills, reputation, and credibility. You were appointed with an understanding that you would operate independently, on the basis of your own judgment and personal accountability. Under such relatively unique circumstances, your personal disqualification from some portion of the Whitewater matter would be a considera-

---

**2.** In more common *qui tam* actions, the interests of the Government and the private litigant will be parallel, rather than conflicting. *See Kelly*, 9

F.3d at 760. This fact reinforces the Court's overall conclusion.

ble disability to the government. Balanced on the other side, I see only a very small possibility that anyone would view your actions in this matter as anything but impartial. Neither you, nor your law firm, have or intend to represent International Paper or Prudential in any matter that even remotely intersects with Whitewater. Given these circumstances, I have no hesitancy in determining that the government's interest in your participation in the matter outweighs any concern that a reasonable person may question the integrity of your handling of the matter.

As we have agreed, I have consulted with the Office of Government Ethics who have advised me that they concur in this determination.

(Footnotes omitted.) Thus, the Department of Justice examined the issue of Defendant's alleged conflict of interest and acquiesced in his participation. Mr. Satterfield has failed to allege with particularity Defendant's submission of a fraudulent claim. The Court concludes that, even accepting Mr. Satterfield's allegations as true, he has failed to state a claim against Defendant and under the FCA upon which relief may be granted.

### The Government's Motion to Dismiss

#### 1. The Relevant Law

Section 3730(c)(2)(A) provides that

[t]he Government may dismiss the action *notwithstanding the objection of the person initiating the action* if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for hearing on the motion.

(Emphasis added.) In *United States ex rel. Sequoia Orange Co. v. Sunland Packing House Co.*, the United States District Court for the Eastern District of California held that "review of a decision to dismiss an FCA case is limited to determining whether the government has a legitimate government[al] interest that will be achieved by dismissal, which is not arbitrary or otherwise illegal." 912 F.Supp. 1325, 1340 (E.D.Cal.1995). The court noted that the plain language of the statute—affording an objecting relator an opportunity for a hearing prior to dismissal-

implies that the decision to dismiss is reviewable by the court. *See id.* at 1338. The court went on to cite legislative history: "the relator's right to object to dismissal is intended to serve 'as a check that the Government does not neglect evidence, cause undue delay, or drop the false claims cases without *legitimate* reasons.' " *Id.* at 1339 (quoting Senate Judiciary Committee, False Claims Amendments Act of 1986, S.Rep. No. 345, 99th Cong.2d Sess. 25–26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291) (emphasis in original). Thus, the *Sunland Packing* court applied a two-step analysis to test the justification for dismissal: (1) identification of a legitimate, or valid, government purpose and (2) identification of a rational relationship between dismissal and the accomplishment of that purpose. *See id.* at 1341.

#### 2. Discussion

■ It is the opinion of the Court that the decision whether to maintain an action under the *qui tam* provisions of the FCA rests largely with the Government. Indeed, *"qui tam* plaintiffs are merely agents suing on behalf of the government, which is always the real party in interest." *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1215 (9th Cir.1996). It is perfectly clear that the United States can dismiss the case without Mr. Satterfield's consent. *See* 31 U.S.C. § 3730(c)(2)(A); *Northrop Corp.*, 91 F.3d at 1215 (citing § 3730(c)(2)(A) as enabling the government to dismiss suit without relator's consent); *United States ex rel. Taxpayers Against Fraud*, 41 F.3d 1032, 1041 (6th Cir. 1994) (noting that "the government may ... even decide that the case should be dismissed"); *Kelly*, 9 F.3d at 746 (noting that "the government may end the litigation"). Various courts have relied upon that fact in determining that the *qui tam* provisions of the FCA do not violate the separation-of-powers doctrine. *See, e.g., Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 755.

The Court will dismiss the case on the request of the Government. Applying the *Sunland Packing* test, the Court concludes that the Government's proffered reason for urging dismissal—that the allegations are

without merit—is a legitimate governmental reason and that dismissal is rationally related to the Government's desire to clear from the Court docket a meritless claim. More seriously, the Court has examined the submissions of the parties and has determined that the United States has neither failed to investigate Mr. Satterfield's claims nor arbitrarily rejected them. Indeed, the unchallenged record demonstrates that the Department of Justice confronted these issues. Thus, as noted above, Mr. Satterfield's finger, in essence, points at the Department of Justice. The Court concludes that it cannot, on this record, usurp the general power of the Executive Branch to control this type of litigation since it is clear that the Department of Justice has not acted arbitrarily or capriciously or otherwise improperly in moving for the dismissal of this claim. Thus, the Court will grant the Government's Motion to Dismiss.

### III

■ The Court does not see the need in the instant case for an evidentiary hearing.[3] The Ninth Circuit Court of Appeals has noted that "Congress apparently intended that the provision authorizing relators to formally object to any motions to dismiss ... should not pose a significant burden for the government or courts." *Kelly,* 9 F.3d at 754 n. 11. The court explained by quoting a report of the Senate Judiciary Committee as follows:

Any objections filed by the *qui tam* plaintiff may be accompanied by a petition for an evidentiary hearing on those objections. The Committee does not intend, however, that evidentiary hearings be granted as a matter of right. We recognize that an automatic right could provoke unnecessary litigation delays. Rather, evidentiary hearings should be granted when the *qui tam* relator shows a 'substantial or particularized need' for a hearing. Such a showing could be made if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or

that the Government's decision was based on arbitrary and improper considerations.

*Id.* (quoting Senate Judiciary Committee, False Claims Amendments Act of 1986, S.Rep. No. 345, 99th Cong., 2d Sess. 26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291). For the reasons noted in Part II.C. of this Order, the Court finds that Mr. Satterfield has failed to establish that an evidentiary hearing would help the Court in reaching the proper outcome in the instant case. Thus, the Petition for Evidentiary Hearing will be denied.

Finally, although the Court will not base its decision on jurisdictional grounds, Mr. Satterfield's alleged need for discovery raises the question of whether this Court has jurisdiction at all. In his Petition, Mr. Satterfield states that he "should be given discovery" and notes the following items for discussion at the proposed hearing:

1. Copy of all applications by Attorney General Reno to the Special Division of Court recommending Mr. Fiske's appointment;

2. Matters and dates [on] which Mr. Fiske or his firm represented Prudential and International Paper prior to his appointment through August 1, 1995;

3. Matters and dates of representation of Prudential related to general partner Watson & Taylor, Madison Guaranty Savings & Loan or First South Saving & Loan;

4. Identity of the person recommending Mr. Fiske to Attorney General Reno for appointment as Independent Counsel;

5. Matters and dates of representation of Prudential and International Paper before the Department of Justice, SEC or other regulatory body;

6. Identity of person or persons involved with the drafting of the Code of Federal Regulation providing Mr. Fiske's appointment;

7. Accounting of all compensation and expenses arising out of Mr. Fiske's tenure;

---

**3.** The Court notes that Mr. Satterfield's recent request is not for an opportunity to put on evidence but for the discovery of evidence that he

hopes will support his FCA Complaint. This is clear from his pleadings and his oral responses during the April 7, 1997, hearing.

8. Copies of transcripts of all *in camera* proceedings in all Arkansas Federal District Courts;

9. Matters and dates of representation of Exxon with the Justice Department or any other regulatory agency;

10. Current employment location of the former staff and attorneys who worked under Mr. Fiske;

11. Copy of the letter from Mr. Fiske to the Department of Justice concerning his conflict inquiry about representation of Prudential and International Paper;

12. Copy of the letter of authority or certificate from Attorney General Reno appointing him as prosecutor[;]

13. Copy of the criminal complaint filed against Prudential on or about October 19, 1994, in New York or elsewhere.

Petition for Evidentiary Hearing at 1–2. Section 3740(e)(4) provides as follows:

(4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has provided the information to the government before filing an action under this section which is based on the information.

It is unclear to the Court which allegations Mr. Satterfield could argue were not publicly disclosed.

█ If indeed Mr. Satterfield's allegations stem from publicly disclosed information— even if through discovery—it is clear that the Court would lack jurisdiction because by no stretch of the imagination is Mr. Satterfield an "original source" of the information. *See*

*United States ex rel. Barth v. Ridgedale Elec., Inc.,* 44 F.3d 699, 703 (8th Cir.1995). Under § 3730(e)(4)(B), a *qui tam* relator must have both direct and independent knowledge of the alleged fraudulent activity. *See id.* The Eighth Circuit has defined *independent knowledge* as "knowledge that is not dependent on public disclosure" and *direct knowledge* as "knowledge marked by absence of an intervening agency or unmediated by anything but [the plaintiff's] own labor." *Id.* (internal citations and quotations omitted). "A relator is said to have direct knowledge of fraud when he 'saw [it] with his own eyes.' " *Id.* (quoting *Wang v. FMC Corp.,* 975 F.2d 1412, 1417 (9th Cir.1992)). This Court has no trouble concluding that Mr. Satterfield does not have direct knowledge of the allegations he has made against Defendant.

*IV*

IT IS THEREFORE ORDERED that the United States' Motion to Dismiss [4] be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that the Petition for Evidentiary Hearing [5] be, and it is hereby, DENIED.

---

4. Docket No. 8.

5. Docket No. 12.