KEITH, Circuit Judge,
concurring.
Although I concur in the result the majority reaches, I write separately to provide clarification as to: 1) the current state of the law regarding dismissal of a private citizen’s qui tam claim for failure to comply with the False Claims Act’s filing procedures; and 2) Congress’ intent in creating these procedures.
I.
Although the proper rule to be used when assessing whether to dismiss a relator’s improperly filed qui tam complaint is an issue of first impression' in the Sixth Circuit, both the Second and Ninth Circuits have addressed the matter. United States ex rel. Lujan v. Hughes Aircraft Co., 67 F.3d 242 (9th Cir.1995); United States ex. rel. Pilon v. Martin Marietta Corp., 60 F.3d 995 (2d Cir.1995). Contrary to defendant LHC Group Inc.’s (LHC) and the district court’s characterization, however, our sister circuits have adopted an approach that determines whether to dismiss an improperly filed complaint on a case by case basis, as opposed to the per se rule adopted here.
The district court, in concluding that letter-perfect compliance with the FCA’s filing procedures is required to survive a motion to dismiss, relied primarily on Erickson ex rel. United States v. American Inst. of Biological Scis., 716 F.Supp. 908 (E.D.Va.1989). The court in Erickson, lacking any guidance for its interpretation of the then relatively new procedures, concluded that dismissal of improperly filed claims is mandatory. Id. at 911-12. Since then, however, multiple courts have addressed the matter, hesitating to adopt a rule requiring dismissal. See Lujan, 67 F.3d at 245 (setting out a three-part balancing test for the purposes of determining whether the court should dismiss relator’s improperly filed qui tam complaint); Pilon, 60 F.3d at 998-99, 1000 n. 5 (examining the impact of filing and service de *300 fects on government’s ability to prosecute the case before granting dismissal and distinguishing the case from another where the procedural failure had minimal impact); United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., 668 F.Supp.2d 780, 803 (E.D.La.2009) (“[Numerous courts have held that such requirements are not jurisdictional and their violation does not require dismissal of the complaint.”); United States ex rel. Bogart v. King Pharms., 414 F.Supp.2d 540, 544 (E.D.Pa.2006) (“Although a few district courts outside the Third Circuit have held that the FCA’s filing and service requirements are jurisdictional, other persuasive circuit authority calls for a balancing of factors when determining whether procedural defects warrant dismissal.”); Wisz ex rel. United States v. C/HCA Dev., Inc., 31 F.Supp.2d 1068, 1069 (N.D.Ill.1998) (denying defendant’s motion to dismiss as relator’s filing failure did not prevent the government from having the opportunity to determine whether to intervene); United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F.Supp. 1040, 1054 (S.D.Ga.1990) (“The Court sees no reason to demand letter-perfect compliance with the provision in a ease[] such as this one[.]”); United States ex rel. Kusner v. Osteopathic Ctr., No. 88-9753, 1996 WL 287259, *5, 1996 U.S. Dist. LEXIS 7389, *15 (E.D.Pa. May 28, 1996) (“[T]here is nothing in the language of the False Claims Act which requires that a qui tarn complaint be dismissed with prejudice if the confidentiality provisions are violated!;.]”).
As noted, among the courts that have refrained from adopting a per se rule are both the Second and Ninth Circuits. While the district court and LHC both read the Second Circuit’s decision in United States ex rel. Pilon v. Martin Marietta Corp., as requiring dismissal in every instance, a closer reading provides a more nuanced answer. The Pilón court, as opposed to reflexively finding that dismissal was required, engaged in a careful analysis of the impact of the relator’s violation on the United States’ ability to pursue a potential case against the defendant — Congress’ prime motivation in creating the filing procedures. 60 F.3d at 999. Additionally, the court discussed the relator’s lack of a good faith in failing to fulfill the procedural requirements. Id. Only after the court completed discussing these points, did it buttress its decision with other cases reaching the same conclusion. Id. at 998-99. See also, Brooks-Ngwenya v. Indianapolis Pub. Schs., 564 F.3d 804, 808 (7th Cir.2009) (interpreting Pilón as requiring dismissal only when the procedural error has caused irreparable harm); Bogart, 414 F.Supp.2d at 544 (citing Pilon for the proposition that the court must consider the impact of the procedural error before dismissing improperly filed complaint).
Taking the Pilon court’s analysis and restating it, the Ninth Circuit in United States ex rel. Lujan v. Hughes Aircraft Co., enunciated a three-factor test to determine whether a court should dismiss an improperly filed claim, namely: 1) whether the violation actually harmed the government; 2) the nature and scope of the violation, specifically whether the relator violated all aspects of § 3730(b)(2), as opposed to only some of them; and 3) whether the relator committed the violations willfully or in bad faith. 67 F.3d at 245-247. Finding that the lower court had failed to engage in the proper balancing, the court in Lujan remanded the case for further proceedings in accordance with its decision. Id. at 248. As noted, a number of lower courts have since adopted the Lujan court’s approach.
*301 While the majority’s interpretation of the False Claims Act is an eminently reasonable one with which I agree, I highlight that it is not based on the misinterpretation of Pilón L.H.C. advanced and the lower court accepted.
II.
LHC also argues that the imposition of a rule requiring mandatory dismissal is supported by Congress’ intent in creating the requirements. LHC argues specifically that Congress, in addition to protecting the government’s right to investigate the private citizen’s claim, sought to safeguard the defendant’s interest in not being improperly defamed. I, like the majority, find little support for LHC’s argument.
Congress created the filing requirements for the primary purpose of securing for the government the opportunity to weigh the merits of a private citizen’s qui torn claim and, if necessary, investigate the allegations made. See S.Rep. No. 99-345, at 24 (1986) reprinted in 1986 U.S.C.C.A.N. 5266, 5289; see also, e.g., Pilon, 60 F.3d at 998-99 (quoting the Committee report).
While the Committee noted a secondary concern regarding defendants to qui tam suits, it was not the concern that LHC alleges. The Committee’s sole concern regarding the rights of defendants was the potential that were the government not allowed to determine whether or not it would intervene first, the defendant may have to file an answer without knowing who it would eventually face in court. S.Rep. No. 99-345, at 24, 1986 U.S.C.C.A.N. 5266, 5289. As the court in Lujan stated, “[njever did the Committee discuss, let alone imply that it sought to protect” the defendant from attack. 67 F.3d at 247. In fact, “by providing for sealed complaints, the Committee d[id] not intend to affect the defendant’s rights in any way.” Id. See also, Pilon, 60 F.3d at 999 (listing a “defendant’s reputation” as one of the “other interests not addressed by [the] legislative history” (emphasis added)).
Beyond merely the Committee report, the text of the Act supports this conclusion. As the majority notes, the sole party authorized by the FCA to alter the filing procedures is the Attorney General who may, at his discretion, extend the 60 day in camera period to facilitate a more thorough investigation. 31 U.S.C. § 3730(b)(3). Had Congress intended to protect the defendant’s public reputation, it could have given the defendant similar powers or, at a minimum, once the government’s investigation was complete, required that it be given notice of the claim before the complaint was made public. Instead, the text of the Act is devoid of any such provisions.
Accordingly, the majority was correct not to impute to Congress an intent to protect the defendant or to rely on such in reaching its conclusion.
III.
Having addressed these matters, I CONCUR in the majority’s decision.