**Douglas ESTRADA, Plaintiff–Appellee,**

v.

**SPENO & COHEN, Attorneys at Law; Sarah Speno; David B. Cohen, Defendants–Appellants.**

**No. 99–56013.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2001

Filed March 30, 2001

As Amended on Denial of Rehearing and Rehearing En Banc May 24, 2001.*

* Judges Trott and Silverman have voted to deny the petition for rehearing en banc, and

Judge Archer so recommends.

David B. Cohen, Speno & Cohen LLP, New York, New York, for the defendants-appellants.

James S. Link, Pasadena, California, for the defendants-appellants.

Jose R. Paz, Law Offices of Michael V. Severo, Los Angeles, California, for the plaintiff-appellee.

Before: ARCHER,[*] TROTT, and SILVERMAN, Circuit Judges.

TROTT, Circuit Judge:

In this appeal, we must decide whether the district court abused its discretion by ordering default judgment against a party on the basis of the party's repeated, persistent refusal to follow court orders. Our jurisdiction over this appeal derives from 28 U.S.C. § 1291. Under the egregious circumstances presented in this case, we conclude that the district court did not abuse its discretion, and therefore affirm.

# I

## Background

Appellee Douglas Estrada ("Estrada") was the president and sole shareholder of Allstate Mortgage Company ("Allstate"), a California corporation. In September of 1997, another company, Norwest Mortgage Company ("Norwest"), sued Allstate and Estrada personally in the Los Angeles County Superior Court asserting several fraud causes of action. Estrada hired New York attorneys Sarah Speno ("Speno") and David Cohen ("Cohen") (collectively "Speno and Cohen") of Speno & Cohen, LLP to represent him and Allstate in the Norwest civil action and in any other matter arising out of the operation of

---

[*] The Honorable Glenn L. Archer, Jr., Senior Circuit Judge for the Federal Circuit, sitting by designation.

Allstate. In two separate installments, Estrada paid Speno and Cohen $325,000 as a retainer.

Because Speno and Cohen were New York attorneys, they could not immediately appear on behalf of Estrada in Los Angeles County. Consequently, Speno and Cohen hired a California attorney, Patrick Thistle, to defend Estrada and Allstate against Norwest's allegations.

Late in September of 1997, Norwest obtained an injunction from the Los Angeles County Superior Court forbidding Estrada from transferring funds from his personal or corporate bank accounts to any other bank accounts. According to Estrada's complaint, in direct defiance of the court's order, Speno and Cohen each advised Estrada to transfer funds from his accounts to off-shore banks to avoid detection by Norwest or by any criminal prosecutorial agency. Purportedly following their advice, Estrada transferred seven million dollars to bank accounts in New Zealand and Singapore.

About a month later, Estrada, accompanied by Speno and Cohen, met with two Assistant United States Attorneys in Los Angeles. At the meeting, the Assistant United States Attorney informed the trio that Estrada would be indicted for committing various crimes involving fraud. According to Estrada's complaint, Speno advised Estrada to flee the United States and go into hiding. Purportedly following Speno's advice, Estrada fled to Rosarito, Mexico.

Estrada also averred in his complaint that Speno arranged for him to travel to New York under an assumed name so that the two could have a meeting. At this meeting, Speno allegedly instructed Estrada not to surrender and advised him that he would have to live outside of the United States for approximately two years in order to avoid being arrested. Shortly thereafter, in mid-December of 1997, Estrada dismissed Speno and Cohen as his counsel and hired a new lawyer.

It is unclear exactly what happened next with respect to the criminal case brought by the government or to the civil case brought by Norwest. What is clear, however, is that Estrada turned around and sued Speno and Cohen, individually and as a law firm, in the United States District Court for the Central District of California under diversity jurisdiction, alleging negligence, negligent representation, conversion, fraud, and breach of fiduciary duty. United States District Judge Dickran Tevrizian ("Judge Tevrizian") was assigned the case.

Acting *pro se*, Speno and Cohen answered Estrada's complaint denying his allegations and asserting various affirmative defenses. Judge Tevrizian set a Mandatory Status Conference for August 10, 1998. Three days prior to the conference, attorney Brian Shear served notice of association of counsel on behalf of Speno and Cohen. Shear's representation, however, was short-lived—on October 28, 1998, Speno and Cohen asked Judge Tevrizian to allow Shear to withdraw as counsel and to permit them to "continue as sole counsel of record." Judge Tevrizian allowed Shear to withdraw.

On November 5, 1998, Speno and Cohen, acting *pro se*, filed several motions, including a motion to dismiss Estrada's complaint and a motion for summary judgment. Judge Tevrizian scheduled the motions for a hearing on December 7, 1998. Although Speno and Cohen filed a formal notice of appearance as "Defendants Pro Se" on November 12, 1998, neither appeared for the December 7th hearing. Instead, another lawyer, Lawerence Young, showed up. Judge Tevrizian refused to allow Young to appear on behalf of Speno and Cohen because Young had not filed an association of counsel form with the court.

Nevertheless, Judge Tevrizian decided Speno's and Cohen's motions on the merits. In so doing, he dismissed four of Estrada's claims—negligence, negligent misrepresentation, fraud, and breach of fiduciary duty—because the doctrine of unclean hands precluded Estrada from recovering compensatory or punitive damages

from Speno and Cohen. *See Blain v. The Doctor's Co.*, 222 Cal.App.3d 1048, 272 Cal. Rptr. 250 (1990); *Feld and Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick, and Cabot*, 312 Pa.Super. 125, 458 A.2d 545 (1983). However, Judge Tevrizian granted Estrada leave to file an amended complaint seeking only restitution for the fees paid to Speno and Cohen. Finally, Judge Tevrizian denied Speno's and Cohen's motion for summary judgment.

Following Judge Tevrizian's order, Estrada filed his amended complaint seeking restitution on December 17, 1998. Speno and Cohen moved to dismiss Estrada's amended complaint claiming insufficient service of process. The court set their motion to dismiss for hearing on February 22, 1999. For the second time, Speno and Cohen failed to appear to argue their own motion. Judge Tevrizian denied the motion to dismiss, and admonished Speno and Cohen that if they "fail to personally attend future regularly scheduled court proceedings, their responsive pleadings will be struck and a default will be entered against them...."

In the meantime, Estrada sought to depose Speno. He served Speno with a formal notice identifying the date, time, and place (Los Angeles) for a scheduled deposition. Speno neither objected to the deposition nor sought a protective order. However, when Estrada, his lawyer, and a shorthand reporter went to the designated place for the deposition, Speno never showed up. Speno admits that she received Estrada's notice, but simply "disregarded" it because she did not consider Los Angeles an appropriate venue for the deposition.

Estrada filed a motion to compel Speno to submit to a deposition and for sanctions. Pursuant to local court rules, the court ordered the parties to "meet and confer" regarding the motion to compel. *See* Local Rules of the United States District Court for the Central District of California ("Local Rules"), Rule 7.15.1 ("Prior to the filing of any motion relating to discovery pursuant to F.R.Civ.P. 26–37,

counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible."). Estrada sent Speno a letter in an effort to "meet and confer," suggesting several dates and times to reschedule a deposition. Speno did not respond to the letter in any way. Estrada went back to the district court and explained the situation. The court set a briefing schedule and an April 30, 1999 hearing date. Speno and Cohen filed motions opposing Estrada's motion to compel, but when the time came for the hearing, neither Speno nor Cohen, nor anyone on their behalf appeared. Magistrate Judge Ann I. Jones ("Magistrate Judge Jones") noting that "defendants' improper conduct has already delayed the taking of [Speno's] deposition by over two months," granted Estrada's motion to compel and ordered Speno to submit to a deposition within thirty days. Further, Magistrate Judge Jones assessed a $1,420.95 sanction because Speno's failure to appear at the properly scheduled deposition was "without substantial justification." Finally, Magistrate Judge Jones observed that even though Judge Tevrizian already had instructed Speno and Cohen to personally attend court proceedings, they failed to appear at the hearing for the motion to compel.

Speno and Cohen paid the sanction, but Speno did not submit to a deposition within thirty days; in fact, she has never submitted to a deposition. Instead, on May 3, 1999, only a few days after being ordered to testify at a deposition, Speno and Cohen filed a second motion for summary judgment. Judge Tevrizian set the motion hearing for May 24, 1999. On May 19, 1999, attorney Patrick Thistle filed a notice of association of counsel, seeking to represent Speno and Cohen. Thistle, of course, was the same attorney Speno and Cohen had previously hired to defend Estrada against Norwest's fraud action. Pointing out the obvious potential conflict of interest, Estrada filed a formal objection to Thistle's association. Judge Tevrizian had

his clerk telephone Speno and Cohen to inform them of the possible conflict and to order them to personally appear at the May 24th hearing. The clerk was unable to reach Speno or Cohen personally, but left the following message on their answering machine:

Mrs. Speno, this is ... Judge Tevrizian's clerk. I'm calling on Thursday at 11:30 Los Angeles time. The judge is ordering both you and Mr. Cohen to be in court on Monday. There is a problem with your local counsel. In the documents that had been previously filed, we noted that Mr. Thistle previously represented Douglas Estrada and there is a possible conflict so he wants you and Mr. Cohen in court on Monday—that's May 24th at 10 o'clock and could you please call me to confirm that you got this message and you will be there. Otherwise, there will be some problems if you are not present. I'm at [phone number]. I want you to call and confirm that you will be in court on Monday and the judge did mention if you were not there he may have to send out a U.S. Marshal. So please call me to confirm that you got this message. Bye.

Neither Speno nor Cohen returned the clerk's message. Neither called to request a continuance. And, neither showed up for the hearing. Instead, Thistle appeared on their behalf. This marked the third time Speno and Cohen filed a motion necessitating a hearing which they did not attend. Judge Tevrizian, understandably frustrated with the defiant behavior of Speno and Cohen, noted the serious allegations of Estrada's complaint, the tortured procedural history of the case, and the potential conflict surrounding Thistle's association. He then stated on the record:

[T]hat's why I had the clerk last week order Speno and Cohen into court. Again, they've refused and the ultimate sanction now is going to be imposed.... The defendants have left me with no other alternative other than to strike their answer and enter a default in the sum of three hundred and twenty five thousand dollars ($325,000) in plaintiff's favor.

In an effort to avoid the imposition of the "ultimate sanction," Thistle pointed out that the clerk left the phone message only four days before the hearing. Because Speno and Cohen lived in New York, Thistle claimed it was "difficult if not impossible" for them to make an appearance in California on such short notice. Thistle failed to acknowledge, however, that Judge Tevrizian had set this motion for hearing three weeks earlier. Moreover, Thistle failed to explain why nobody returned the clerk's call as demanded or why Speno and Cohen did not call the court prior to the hearing to ask for a continuance so they could attend. Nevertheless, Thistle asked Judge Tevrizian to "continue this matter over, at least a short time, in order to give Speno and Cohen an opportunity to appear in person before executing this order...." Judge Tevrizian responded:

Normally, I would do that, but, in this particular case, based upon the pattern that has developed in this matter, time and time again where they have basically acted as obstructionists and refused to honor any request by this Court I'm not going to grant your request to continue the matter. Their answer ... is struck today and a default [ordered] in plaintiff's favor....

Speno and Cohen timely appealed Judge Tevrizian's order entering default judgment against them.

## II

### Discussion

#### A. Standard of Review

■ Before ordering default judgment against a party for vexatious litigation tactics, the district judge must consider: (1) the existence of extraordinary circumstances and the presence of wilfulness, bad faith, or fault by the offending party; (2) the efficacy of lesser sanctions; and (3) the relationship or nexus between the miscon-

duct and the matters in controversy. *See United States ex rel. Lujan v. Hughes Aircraft Co.,* 67 F.3d 242, 247 (9th Cir. 1995). In addition, as optional considerations, the court may also assess the prejudice to the party-victim of the misconduct and the government interests at stake. *See id.*

The district judge's factual findings are reviewed under the clearly erroneous standard, and the judge's decision to order default judgment is reviewed for an abuse of discretion. *See Halaco Eng'g Co. v. Costle,* 843 F.2d 376, 379 (9th Cir.1988); *Lujan,* 67 F.3d at 247. "The question is not whether this court would have, as an original matter, imposed the sanctions chosen by the trial court, but whether the trial court exceeded the limits of its discretion." *Halaco Eng'g,* 843 F.2d at 379. Under this deferential standard, we will overturn a court's decision to order default judgment as a sanction for misconduct "only if we have a definite and firm conviction that it was clearly outside the acceptable range of sanctions." *Malone v. United States Postal Serv.,* 833 F.2d 128, 130 (9th Cir. 1987).

## B. Analysis

As discussed in detail below, we determine that Judge Tevrizian's decision to order default judgment against Speno and Cohen was within the acceptable range of sanctions.

### 1. Extraordinary Circumstances and Bad Faith

Speno and Cohen failed to appear in court at least three times when they themselves filed the motion necessitating the hearing. At the first of these hearings, Speno and Cohen sent another attorney, Lawrence Young, to advocate on their behalf even though no association of counsel form had been lodged with the court. At the second hearing, nobody—not Speno, Cohen, or any other lawyer—appeared at all. At the third hearing, Speno and Cohen noticed in Patrick Thistle as their counsel of record knowing full well that

Thistle had previously represented their adversary, Estrada, in a related case.

On several occasions, Judge Tevrizian expressed his frustration with Speno and Cohen for their failure to attend regularly scheduled hearings. Despite the judge's numerous warnings and specific instructions, neither Speno nor Cohen ever appeared for any court proceeding. These circumstances are extraordinary and demonstrate intentional, wilful bad faith conduct on the part of the defendants. *See Lujan,* 67 F.3d at 247.

### 2. Efficacy of Lesser Sanctions

Speno and Cohen contend that Judge Tevrizian failed to explicitly consider on the record the possibility of alternative sanctions, and that his failure to do so is an abuse of discretion. Estrada responds that Judge Tevrizian did indeed consider lesser sanctions, and that even if he did not discuss other penalties on the record, his failure does not, by itself, constitute an abuse of discretion. We agree with Speno and Cohen that Judge Tevrizian did not explicitly consider alternative sanctions on the record, but under the circumstances of this case, we hold that he was not required to do so.

Judge Tevrizian's comment that "[t]he defendants have left me with no other alternative other than to strike their answer and enter a default ... in plaintiff's favor" does not satisfy the type of explicit discussion of alternative sanctions our precedent demands. *See Malone,* 833 F.2d at 132. Nowhere on the record did Judge Tevrizian expressly state that he considered specific lesser sanctions, such as formal reprimand, suspension, or imposition of fees, or that he found lesser sanctions to be inadequate. *See id.* at 132 n. 1; *see also Halaco Eng'g,* 843 F.2d at 381 ("This court has said that the consideration of less severe penalties must be a reasonable explanation of possible and meaningful alternatives."). Rather than being a thorough discussion of alternative sanctions, Judge Tevrizian's comment was sim-

ply a justification for rejecting Thistle's request for a continuance. *See Malone,* 833 F.2d at 132.

Nevertheless, Judge Tevrizian's failure to discuss on the record alternative sanctions does not, by itself, constitute an abuse of discretion. While "[w]e have indicated a preference for explicit discussion by the district court of the feasibility of alternatives when ordering dismissal," *id.* at 132, there are circumstances where such a discussion would be superfluous or unnecessary. For example, we have held that a judge's warning to a party that a future failure to obey a court order will result in default judgment can itself suffice to meet the "consideration of alternatives" requirement. *See id.* Furthermore, "explicit discussion of alternatives is unnecessary if the district court actually tries alternatives before employing the ultimate sanction of dismissal." *Id.; see also Valley Eng'rs Inc. v. Electric Eng'g Co.,* 158 F.3d 1051, 1058 (9th Cir.1998) (describing "alternatives" factor as consisting of three "subparts": discussion of alternatives, previous use of alternatives, and prior warning); *Oliva v. Sullivan,* 958 F.2d 272, 274 (9th Cir.1992) (holding that explicit discussion of alternative sanctions is not necessary where egregious circumstances exist).

Both exceptions exist here. "The significance of warning is that a sanction may be unfair if the party could not have realized that it was in jeopardy of so severe a consequence" if it continued to defy court orders. *Valley Eng'rs,* 158 F.3d at 1057. At the February 22, 1999 hearing, where Speno and Cohen for the second time failed to appear for a hearing necessitated by their own motion, Judge Tevrizian unmistakably admonished them that a future failure to personally attend regularly scheduled court proceedings would result in their answers being struck and default judgment being ordered against them. Thus, Speno and Cohen were put on notice and must have realized that further defiance of the court's order to personally attend court proceedings could result in default judgment.

Moreover, on previous occasions, the court actually imposed monetary sanctions and threatened to employ other penalties, all to no avail. For instance, before the May 24th hearing, Judge Tevrizian's clerk telephoned Speno and Cohen to inform them that their presence at the hearing was mandatory. The clerk attempted to impress upon Speno and Cohen the seriousness of Judge Tevrizian's order by stating: "I want you to call and confirm that you will be in court on Monday and the judge did mention if you were not there he may have to send out a U.S. Marshal." Despite this stern warning, Speno and Cohen did not attend the hearing. Even more, neither of them called the court to confirm receipt of the message or to seek a continuance even though at oral argument their counsel candidly acknowledged that they received the message at least two days before the scheduled hearing. Simply put, Judge Tevrizian's invocation of the United States Marshal's Service was insufficient to compel Speno and Cohen's presence in court.

As another example, Magistrate Judge Jones imposed a $1,420.95 sanction on Speno and Cohen for Speno's failure to attend a properly scheduled deposition. In her order, Magistrate Judge Jones explicitly observed that Judge Tevrizian had previously admonished Speno and Cohen to personally attend scheduled court proceedings, but that neither appeared at the hearing for Estrada's motion to compel. Speno and Cohen paid the sanction, but Speno never submitted to a deposition. In fact, Speno and Cohen missed the very next scheduled court proceeding, a hearing triggered by their own summary judgment motion. The court's use of monetary sanctions, like Judge Tevrizian's threat to call in the United States Marshal, was inadequate to compel Speno's and Cohen's presence in court.

Thus, in at least three separate instances, the court threatened Speno and Cohen with alternative penalties, actually imposed monetary sanctions, and unambiguously

warned them that future failure to personally attend regularly scheduled court proceedings would result in default judgment. None of these tactics achieved the objective of persuading Speno and Cohen to personally attend a single court proceeding. Under these circumstances, we find that further alternative sanctions would have been futile. *See Malone*, 833 F.2d at 132.

### 3. Nexus Between Speno's and Cohen's Misconduct and the Matters in Controversy

 Speno and Cohen argue that their failure to personally appear at court proceedings has no bearing on the merits of the case, and therefore that Judge Tevrizian's decision to order default judgment against them was an abuse of discretion. They are correct that default may not be entered as a sanction for a party's misconduct where the misconduct is unrelated to the merits of the suit. *See Halaco Eng'g*, 843 F.2d at 381 ("There must be a nexus between the party's actionable conduct and the merits of his case."); *Phoceene Sous–Marine v. United States Phosmarine, Inc.*, 682 F.2d 802 (9th Cir.1982) (same). However, as explained below, we find Speno and Cohen's cantankerous behavior, taken as a whole, to be closely related to the merits of Estrada's lawsuit.

The Supreme Court's decision in *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909), is instructive in this respect. In *Hammond Packing*, the State of Arkansas brought suit against Hammond Packing for allegedly violating a state antitrust law. *Hammond Packing*, 212 U.S. at 334, 29 S.Ct. 370. The Attorney General of Arkansas sought to depose various agents of Hammond Packing. *Id.* at 336, 29 S.Ct. 370. Hammond Packing refused to attend the properly scheduled depositions, claiming that attending the depositions would be overly burdensome. *Id.* at 339, 29 S.Ct. 370. Even though the trial court rejected Hammond Packing's argument, the company refused to attend future depositions. *Id.* As a result, the trial court struck Hammond Packing's answer and ordered default judgment in favor of Arkansas. *Id.* at 341–42, 29 S.Ct. 370.

The Supreme Court recognized that a trial court generally cannot order default against a party as a sanction for misconduct that is unrelated to the merits of the case. *Id.* at 349–50, 29 S.Ct. 370 (relying on *Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897)). However, the Court determined that Hammond Packing's refusal to submit to a deposition was related to the merits. *Id.* at 350, 29 S.Ct. 370. "This case presents a failure by the defendant to produce what we must assume was material evidence in its possession. . . ." *Id.* Hammond Packing's "refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense." *Id.* at 351, 29 S.Ct. 370. "[T]he law of the United States, as well as the laws of many of the states, afford examples of striking out pleadings and adjudging by default for a failure to produce material evidence, the production of which has been lawfully called for." *Id.* (citations omitted). Because Hammond Packing refused to attend lawfully scheduled depositions, default judgment in favor of Arkansas was appropriate. *Id.*

We adhered to the *Hammond Packing* principle in *Yusov v. Yusuf*, 892 F.2d 784 (9th Cir.1989). In that case, the Yusovs failed to attend a properly scheduled deposition, and after being compelled to submit to a deposition and to pay sanctions, undertook maneuvers to further frustrate deposition-taking. *Yusov*, 892 F.2d at 786. Based on the Yusovs' tactics, Yusuf moved for default judgment. *Id.* The court scheduled a hearing on the motion for default judgment, but neither the Yusovs, nor their attorney chose to attend. *Id.* at 787. The district court ordered default judgment against the Yusovs for over two million dollars. *Id.* We affirmed the district court's order, stating:

The Yusovs and their attorney consistently and willfully failed to obey court

orders and follow the rules of procedure, resulting in great delay. A previous sanction of $3,880 in attorneys' fees had been ignored. The district court has an obligation to manage its docket, and may use sanctions against a party when necessary. The court found that no sanction short of striking the answer and entering default was sufficient. The default against the Yusovs, although harsh, was not an abuse of discretion under the egregious facts of the case.

*Id.*

Speno's and Cohen's misconduct is similar to that of Hammond Packing and of the Yusovs. First, Estrada served Speno with a notice of deposition identifying a specific time and place for the deposition to occur. Speno admittedly received the notice, but did not object, seek a protective order, or even call Estrada's counsel to notify him that she would not attend. Yet, when the time for the deposition arrived, Speno did not. In her own words, she simply "disregarded" it.

Then, Speno failed to respond to Estrada's attempt to "meet and confer." When Estrada sought a court order compelling a deposition and for sanctions, Speno and Cohen filed motions in opposition, but, like the Yusovs, failed to appear at the hearing. Magistrate Judge Jones granted Estrada's motion to compel, ordered Speno to submit to a deposition within thirty days, and imposed a $1420 sanction. Despite the court's order, Speno did not submit to a deposition within thirty days.

Instead, having prevented Estrada from conducting a deposition and developing an evidentiary basis to support his claims, Speno and Cohen filed a second motion for summary judgment claiming that Estrada "is completely unable to demonstrate in any manner whatsoever how Defendants' billing is inflated or exaggerated, and thus there are absolutely no triable issues of fact which warrant a trial herein." Estrada pointed out the irony in Speno's and Cohen's contention: "We now see defendants who have obstructed and frustrated plaintiff's attempts to obtain discovery accuse plaintiff of failing to produce facts."

Moreover, at the hearing triggered by their summary judgment motion, Speno and Cohen associated in Patrick Thistle, the same lawyer who had represented Estrada in a related case. As soon as Estrada objected to Thistle's association, Judge Tevrizian notified Speno and Cohen in no uncertain terms that he wanted them to personally attend the May 24th hearing to discuss the potential conflict. Thus, it was clear that Judge Tevrizian expanded the focus of the May 24th hearing to include the alleged conflict of interest. Speno and Cohen chose not to attend, thereby preventing Judge Tevrizian and Estrada from determining the extent of the conflict. By not attending this portion of the May 24th hearing, Speno and Cohen thwarted Estrada's attempt to ascertain the extent of the conflict, and thereby effectively prevented him from prosecuting his case.

As in *Hammond Packing* and *Yusov*, Speno's refusal to submit to a deposition, as well as Speno's and Cohen's refusal to attend the aspect of the May 24th hearing concerning Thistle's potential conflict of interest demonstrate a steadfast failure on their part to produce material evidence lawfully called for. *See Hammond Packing*, 212 U.S. at 350, 29 S.Ct. 370; *Yusov*, 892 F.2d at 787. Their defiance has "interfere[d] with the rightful decision of the case," *Halaco Eng'g*, 843 F.2d at 381, and may properly be viewed as "an admission of the want of merit in the asserted defense." *Hammond Packing*, 212 U.S. at 351, 29 S.Ct. 370. Accordingly, default judgment was appropriate.

### 4. Optional Considerations

Although the foregoing factors are the only ones that must be considered, a court may assess (a) the prejudice to the party-victim of the misconduct and (b) the government interests at stake, where those factors are appropriate. *See Lujan*, 67 F.3d at 247.

### a. Prejudice to Estrada

 Estrada was clearly prejudiced by Speno and Cohen's opprobrious tactics. First, he has been unable to secure the deposition of Speno. Indeed Speno, without justification, failed to attend the first properly scheduled deposition, even though Estrada, his counsel, and a certified shorthand all showed up.

Second, Speno and Cohen associated in counsel, Patrick Thistle, who clearly presented a potential conflict of interest. Speno and Cohen must have known that Thistle had previously represented Estrada in a closely related case, for they were the ones who hired Thistle to defend Estrada against Norwest. However, their failure to attend the regularly scheduled hearing, despite Judge Tevrizian's unmistakable instruction, precluded the court and Estrada from determining the extent of the potential conflict.

Third, even though neither Speno nor Cohen attended the May 24th hearing, Estrada and his counsel were forced to prepare for and to attend the hearing. *See Malone*, 833 F.2d at 130 ("While Malone did nothing to fulfill her responsibilities under the pretrial order, the Government made a diligent effort to comply with the pretrial order in a timely manner."). In fact, the hearing was initially triggered by Speno's and Cohen's own summary judgment motion and was expanded due to their association of Thistle as counsel.

 Finally, "[w]hether prejudice is sufficient to support an order of dismissal is in part judged with reference to the strength of the [party's] excuse for the default." *Id.* at 131. Speno and Cohen's excuse for failing to attend the May 24th hearing—that it would be "difficult if not impossible" to travel from New York to California on only a few days' notice—is patently groundless. Speno and Cohen filed their motion for summary judgment on May 3rd at which point Judge Tevrizian scheduled the motion for hearing on May 24th. Therefore, Speno and Cohen, who were still acting as counsel of record *pro se* when the hearing was scheduled, had three weeks' notice of the date and time of the hearing. More importantly, Speno and Cohen's excuse in no way justifies their failure to return Judge Tevrizian's telephone message as demanded, or why they failed at least to call the court to seek a continuance. Even assuming it would have been difficult for Speno and Cohen to fly across the country, it certainly would not have been overly burdensome to make a long-distance phone call in response to a United States district judge's order to personally appear in court.

Unfortunately, it is well-known in litigation circles that an oft-employed strategy is to force delay, hoping to wear out the opponent financially or emotionally. Speno and Cohen's consistent pattern of filing a motion and then failing to attend the hearing triggered by the motion appears to us to be such a contumacious maneuver.

### b. Government Interests

 Moreover, the government interests at stake are substantial. Estrada alleges serious misconduct on the part of two members of the legal profession. Further, Judge Tevrizian specifically and repeatedly instructed Speno and Cohen to appear personally at regularly scheduled court proceedings. He threatened them with default judgment and with being arrested by the United States Marshal's Service. Magistrate Judge Jones imposed a $1420 monetary sanction. Yet, Speno and Cohen steadfastly disobeyed court orders, thumbing their noses at Judge Tevrizian, Magistrate Judge Jones, Estrada, and our system of justice.

## III

### Conclusion

Parties may not wilfully, repeatedly, and persistently disobey court orders even after receiving graduating sanctions. There is—and there must be—sufficient play in the joints of our system to allow a district judge to impose the ultimate sanction on such obstreperous parties. Otherwise, the

wheels of justice would quickly grind to a halt.

█ Considering the egregious circumstances of this case, we cannot say that Judge Tevrizian abused his discretion in ordering default judgment against Speno and Cohen.[1]

AFFIRMED.

---

1. We find no merit in Speno and Cohen's alternative argument that Judge Tevrizian erred in denying their previous motions for dismissal and for summary judgment. Even if the doctrine of unclean hands precluded Estrada from seeking compensatory or punitive damages, he is still permitted to seek restitution for fees already paid to Speno and Cohen. "[W]hen a lawyer has by immoral or illegal conduct violated his professional obligations to his client, an action by the client to recover the lawyer's fee will not be barred on the lawyer's plea that the client also engaged in immoral or illegal conduct." *Feld and Sons, Inc.,* 458 A.2d at 554.