Filed 3/24/26; Certified for Publication 4/2/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMAL ALBARGHOUTI, | B333058 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 22STCV17774 |
| v. | |
| LA GATEWAY PARTNERS, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed and remanded with directions.

Brower Law Group, Steven Brower and Tae J. Im for Plaintiff and Appellant.

Cozen O'Connor, Marion T. Hack, J. Michael Schiff and Thomas Casparian for Defendants and Respondents.

Relator Jamal Albarghouti (Relator) filed a complaint against defendants LA Gateway Partners, LLC and PCL Construction Services, Inc. (Defendants) for violations of the California False Claims Act (Gov. Code, § 12650 et seq., CFCA).[1] Relator filed the complaint under the CFCA's qui tam provisions, which allow private individuals to bring claims on the government's behalf.

The CFCA requires a qui tam plaintiff to file the complaint in camera and mail a copy to the Attorney General. If the complaint involves political subdivision funds, the Attorney General must forward the complaint to the relevant local prosecuting authorities. The Attorney General and local authorities must decide whether to intervene in the case and notify the court of their decisions within 60 days. The court may extend the seal and the deadline to intervene upon a showing of good cause. The qui tam plaintiff may not serve the defendant while the complaint is under seal.

Relator filed his complaint in camera and mailed a copy to the Attorney General the same day. Although the complaint concerned political subdivision funds, the Attorney General did not send it to the relevant prosecuting authorities. Neither the Attorney General nor any local authorities gave notice to the court or moved to extend the seal. More than 60 days after filing the complaint, Relator served Defendants. Defendants demurred on the grounds that Relator failed to comply with the CFCA by lifting the seal and serving the complaint before the Attorney General and local authorities notified the court

---

[1] Undesignated statutory references are to the Government Code.

whether they would intervene.  The trial court sustained the demurrer without leave to amend and dismissed the complaint.

On appeal, Relator contends the trial court erred in sustaining the demurrer on the grounds that he failed to comply with the CFCA's sealing and service requirements.  We agree. A qui tam plaintiff is not required to allege compliance with the requirements to state a cause of action, nor does a lack of compliance require automatic dismissal of a CFCA complaint. Therefore, a qui tam plaintiff's failure to comply with the sealing and service requirements does not provide grounds to sustain a demurrer.

We also agree with Relator that he complied with the CFCA's sealing and service requirements.  The undisputed evidence shows Relator filed the complaint in camera, mailed a copy to the Attorney General, and served Defendants after the seal had been lifted.  In concluding otherwise, the trial court seemed to believe a CFCA complaint must remain under seal beyond 60 days when the government neither requests an extension of the seal nor notifies the court of its decision whether to intervene.  We hold the CFCA creates a 60-day default sealing period, after which the seal lifts automatically absent the government's request for an extension.  Accordingly, we reverse the judgment and remand the case with directions to overrule the demurrer.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 2022, Relator filed a complaint against Defendants, alleging two causes of action for violations of the CFCA.  The complaint alleged Defendants submitted false claims to the Los Angeles Department of Water and Power (LADWP)

and Los Angeles World Airports (LAWA) in connection with construction projects at the Los Angeles International Airport.[2]

Relator filed the complaint under seal by affixing to it mandatory Judicial Council form CM-011, entitled "Confidential Cover Sheet False Claims Action."  The form included a blank field for Relator to write the date the seal would expire unless a "[m]otion to extend time is pending" or the seal is "[e]xtended by court order."  Relator wrote in the field that the seal would expire on July 26, 2022—60 days after he filed the complaint.

Relator attached to the complaint proof of service on the Attorney General.  A process server stated under penalty of perjury that he sent the Attorney General the complaint by "certified mail, return receipt requested."

On July 28, 2022—two days after the seal expired—the clerk of the superior court issued a summons on the complaint. About a month later, Relator publicly filed a case management statement.  According to the statement, "[a]ll parties named in the complaint . . . have been served, have appeared, or have been dismissed."[3]

Defendants demurred to the complaint on the grounds that Relator failed to meet the heightened pleading standard for CFCA claims.  While the demurrer was pending, Relator filed a first amended complaint (FAC).  Defendants filed a demurrer to the FAC, arguing Relator improperly based the claim on public

---

[2]    The substance of Relator's allegations are not relevant to this appeal, so we do not discuss them.

[3]    It is not clear precisely when Relator served the complaint on Defendants.  However, the parties seem to agree it occurred sometime after the clerk issued the summons.

information, failed to allege the source of his insider knowledge, failed to allege the existence of a false claim, and failed to identify the specific CFCA provision at issue.  Defendants separately moved to strike a single paragraph from the FAC because it lacked factual support.

A few weeks after filing the demurrer and motion to strike, Defendants filed a motion for judgment on the pleadings.  Defendants argued the court was required to dismiss the complaint because Relator failed to comply with the sealing and service requirements in section 12652 and rule 2.573 of the California Rules of Court.  According to Defendants, those provisions "expressly condition[ ]" a qui tam plaintiff's ability to prosecute an action "on the Court receiving notice from the Attorney General that it has declined to intervene."  (Italics omitted.)  They argued Relator "irredeemably defied the very purpose of the CFCA" by "unilaterally" unsealing the complaint before the Attorney General notified the court of his decision.  (Italics omitted.)  Defendants also asserted "it appears Relator never properly served his complaint on the Attorney General in the first place."

Defendants argued Relator's failure to comply with the CFCA and Rules of Court "robbed [the Attorney General] of the ability to intervene in this action" and deprived the trial court of jurisdiction.  Defendants asserted they suffered incurable prejudice because, "[b]y circumventing the Attorney General," Relator prevented them from negotiating with the state and political subdivisions directly.  They asked the court to dismiss the complaint for lack of jurisdiction and to impose monetary sanctions on Relator.  The court set the hearing on the motion for January 2024.

In May 2023—while the motion for judgment on the pleadings was pending—the trial court sustained the demurrer to the FAC as to one cause of action "on grounds of insufficiency." The court overruled the demurrer as to the other cause of action and denied the motion to strike. The court granted Relator leave to file an amended complaint.

Relator filed the operative second amended complaint (SAC) in June 2023. Defendants demurred to the SAC, repeating many of the arguments from their motion for judgment on the pleadings. According to Defendants, Relator refused to give them the return receipt showing he served the Attorney General. They asserted the "conclusion is clear; there is no return receipt and there was no proper service." Defendants suggested Relator did not serve the Attorney General because his share of the proceeds from the case would be greater if the government did not intervene.

Relator opposed the demurrer. He argued Defendants wrongly assumed he failed to serve the Attorney General. Relator noted that he attached to his complaint a proof of service signed under penalty of perjury. Relator suggested he refused to show Defendants the return receipt because Defendants were refusing to respond to his discovery requests while the demurrer was pending.

Relator urged the court to overrule the demurrer because the CFCA does not require that a complaint remain under seal until the Attorney General gives notice. He pointed to section 12652, subdivision (c)(2), which states the complaint "may remain under seal for up to 60 days." Relator also noted that the statute requires the Attorney General to notify the court within 60 days,

and it does not state the seal must remain in place beyond that time if the Attorney General does not give notice.

The court considered the demurrer at a hearing on August 21, 2023.  After argument from the parties, the court sustained the demurrer without leave to amend.  The court gave three reasons for sustaining the demurrer.  First, Relator failed properly to "comply with Government Code section 12652 in various parts, including [subdivision (c)(2), (3), and (4)]."  Second, Relator "prematurely unsealed the complaint before the Attorney General had an opportunity to make a decision on whether to intervene."  Third, Relator "proceeded to litigate the case . . . after being informed of noncompliance with the statute . . . . [Relator] had the opportunity to either allege in the [SAC] compliance or substantial compliance or attempted compliance or make a motion [or] application to the court to secure compliance before we got to the state of the [SAC]."  After sustaining the demurrer, the court entered an order of dismissal with prejudice.

Relator filed a motion for reconsideration.  He attached to the motion a declaration from Frederick W. Acker, who is a Supervising Deputy Attorney General in the False Claims Unit of the California Attorney General's Office (CAGO). Acker asserted—based on his review of the CAGO's records— Relator properly served the complaint on the Attorney General. The CAGO received the complaint on or about June 2, 2022. According to Acker, the CAGO should have transmitted the complaint to LADWP and LAWA within 15 days of receiving it. However, "an error occurred," and the CAGO did not send the complaint to either.  Acker noted that, because the complaint did not involve State of California funds, in the "ordinary course of business," the CAGO would not have made any court filings

7

related to the complaint. Acker asked the court to set aside the order sustaining the demurrer and allow time for LADWP and LAWA to review the SAC.

Relator also filed a declaration from his counsel, Steven Brower. Brower attached a proposed third amended complaint purportedly addressing the issues the court raised in connection with the demurrer to the SAC. Brower also attached a copy of the certified mail return receipt he received from the United States Postal Service. The receipt was signed "DOJ."

Relator filed a motion for new trial after he filed the motion for reconsideration. The motion for new trial essentially repeated the arguments Relator made in his motion for reconsideration.

The trial court denied Relator's motion for new trial, reasoning "[t]here was no trial in this case." A few months later, the trial court entered judgment for Defendants awarding them costs. Relator timely appealed.

## DISCUSSION

Relator contends the trial court erred by sustaining Defendants' demurrer on the grounds that he failed to comply with the CFCA's sealing and service requirements. According to Relator, a qui tam plaintiff's failure to comply with those requirements neither provides grounds to sustain a demurrer nor requires dismissal. Alternatively, he argues the court erred because the undisputed evidence shows he complied with all the statutory sealing and service requirements. We agree with Relator on both issues.

1. *Standard of review*

We review a judgment after an order sustaining a demurrer de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.

8

(*Los Altos El Granada Investors v. City of Capitola* (2006)
139 Cal.App.4th 629, 650.)  In reviewing the sufficiency of a
complaint against a general demurrer, "we give the complaint
a reasonable interpretation, reading it as a whole and its parts
in their context."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)
We "assume the truth of all facts properly pleaded by the
plaintiffs, as well as those that are judicially noticeable."
(*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001)
25 Cal.4th 809, 814.)

2.      ***The California False Claims Act***

The CFCA went into effect in 1988.  (Stats. 1987, ch. 1420,
§ 1.)  The Legislature modeled it after then-recent amendments
to the federal False Claims Act (FFCA).  (See Sen. Com. on
Judiciary, Rep. on Assem. Bill No. 1441 (1987–1988 Reg. Sess.)
July 14, 1987, p. 2.)  A nonprofit organization, the Center for
Law in the Public Interest, drafted significant portions of both
the federal amendments and the CFCA.  (*Id.* at p. 3.)

The CFCA imposes treble damages and other penalties
on individuals who defraud the state and its political subdivisions
by submitting false claims for government funds.  (*State ex rel.
Edelweiss Fund, LLC v. JP Morgan Chase & Co.* (2020) 58
Cal.App.5th 1113, 1117–1118.)  It requires the Attorney
General and the prosecuting authorities of the state's political
subdivisions "diligently" to investigate violations of the CFCA,
and it authorizes them to bring civil actions against violators.[4]
(See § 12652, subds. (a), (b).)  As relevant here, the CFCA also

---

[4]     We refer to the Attorney General and the various
political subdivisions and their prosecuting authorities as
"the government."

9

authorizes private individuals—referred to as "qui tam plaintiffs" or "relators"—to bring civil actions against violators "for the person and either for the State of California in the name of the state, if any state funds are involved, or for a political subdivision in the name of the political subdivision." (*Id.*, subd. (c)(1).)

Qui tam plaintiffs must comply with procedural requirements beyond those generally required of plaintiffs in civil actions. A qui tam plaintiff must file the complaint "in superior court in camera," and it "may remain under seal for up to 60 days." (§ 12652, subd. (c)(2).) The qui tam plaintiff may not serve the defendant "until after the complaint is unsealed." (*Ibid.*) "Once filed, the action may be dismissed only with the written consent of the court and [the government], . . . taking into account the best interests of the parties involved and the public purposes behind [the CFCA]." (*Id.*, subd. (c)(1).)

On the same date the qui tam plaintiff files the complaint, he must "serve by mail with 'return receipt requested' the Attorney General with a copy of the complaint and a written disclosure of substantially all material evidence and information the person possesses." (§ 12652, subd. (c)(3).) Upon receiving the complaint, the Attorney General must determine whether the case involves state funds, political subdivision funds, or a combination of the two. If the case involves political subdivision funds, the Attorney General must forward the complaint within 15 days to the appropriate prosecuting authorities. (See *id.*, subd. (c)(7)(A), (8)(A).) The Attorney General and the prosecuting authorities may, "for good cause shown, move the court for extensions of the time during which the complaint remains under seal." (*Id.*, subd. (c)(8)(C).)

10

"Within 60 days after receiving a complaint," the Attorney General "may elect to intervene and proceed with the action." (§ 12652, subd. (c)(4), (8)(B).)  The Attorney General must give notice to the court of the decision "[b]efore the expiration of the 60-day period or any extensions obtained."  (*Id*., subd. (c)(6), (8)(D).)  If the Attorney General notifies the court "that it intends to proceed with the action, . . . the action shall be conducted by the Attorney General and the seal shall be lifted."  (*Id*., subd. (c)(6)(A), (8)(D)(i).)  If the Attorney General notifies the court "that it declines to proceed with the action, . . . the seal shall be lifted and the qui tam plaintiff shall have the right to conduct the action."  (*Id*., subd. (c)(6)(B), (8)(D)(iii).)

In cases involving political subdivision funds, the relevant prosecuting authority "may elect to intervene and proceed with the action" within 45 days of receiving the complaint from the Attorney General.  (§ 12652, subd. (c)(7)(B).)  The prosecuting authority must give notice to the court "[b]efore the expiration of the 45-day period or any extensions obtained."  (*Id*., subd. (c)(7)(D).)  If the prosecuting authority notifies the court "that it intends to proceed with the action, . . . the action shall be conducted by the prosecuting authority and the seal shall be lifted."  (*Id*., subd. (c)(7)(D)(i).)  If the prosecuting authority notifies the court "that it declines to proceed with the action, . . . the seal shall be lifted and the qui tam plaintiff shall have the right to conduct the action."  (*Id*., subd. (c)(7)(D)(ii).)

If the government "proceeds with the action, it shall have the primary responsibility for prosecuting the action. The qui tam plaintiff shall have the right to continue as a full party to the action."  (§ 12652, subd. (e)(1).)  The government may move for an order limiting the qui tam plaintiff's

11

participation by showing unrestricted participation "would interfere with or unduly delay the Attorney General's or local prosecuting authority's prosecution of the case." (*Id.*, subd. (i).) The government may dismiss or settle the action over the qui tam plaintiff's objection, but the qui tam plaintiff first has the right to present evidence at a hearing. (*Id.*, subd. (e)(2).)

If the government elects not to proceed with the action, "the qui tam plaintiff shall have the same right to conduct the action as the Attorney General or prosecuting authority would have had if it had chosen to proceed." (§ 12652, subd. (f)(1).) "Upon timely application, the court shall permit the state or political subdivision to intervene in an action with which it had initially declined to proceed if the interest of the state or political subdivision in recovery of the property or funds involved is not being adequately represented by the qui tam plaintiff." (*Id.*, subd. (f)(2)(A).)

A qui tam plaintiff is entitled to a share of the proceeds of the action. If the government timely intervenes, the qui tam plaintiff shall receive between 15 and 33 percent of the proceeds, "depending upon the extent to which the qui tam plaintiff substantially contributed to the prosecution of the action." (§ 12652, subd. (g)(2).) If the government does not timely intervene, the qui tam plaintiff shall receive between 25 and 50 percent of the proceeds, depending on the "amount that the court decides is reasonable for collecting the civil penalty and damages on behalf of the government." (*Id.*, subd. (g)(3).)

12

### 3. *The trial court erred in sustaining Defendants' demurrer and dismissing the complaint*

#### a. *Relator was not required to allege compliance with section 12652's sealing and service requirements*

In sustaining Defendants' demurrer to the SAC, the trial court cited Relator's failure to allege compliance with section 12652's sealing and service requirements. The trial court did not specifically explain why Relator's lack of compliance provided grounds to sustain a demurrer. Presumably, it concluded compliance was necessary to state a cause of action under the CFCA. (See Code Civ. Proc., § 430.10, subd. (e).)

Contrary to the trial court's ruling, compliance with section 12652's sealing and service requirements is not a prerequisite to bringing a qui tam action alleging violations of the CFCA. Nor could it be, as most of the requirements concern actions a qui tam plaintiff may take only after filing the complaint in the superior court. Therefore, a qui tam plaintiff cannot truthfully allege compliance with section 12652's sealing and service requirements, at least in the initial complaint. Nor is there anything in the CFCA to suggest a qui tam plaintiff must allege compliance in amended complaints. Accordingly, Relator's failure to allege compliance with section 12652's sealing and service requirements did not provide grounds for sustaining a demurrer to his complaint, and the trial court erred to the extent it concluded otherwise.[5]

---

[5] Even if a qui tam plaintiff were required to allege compliance in an amended complaint, we still would reverse the order sustaining the demurrer without leave to amend. As we discuss below, the record contains undisputed evidence showing Relator complied with section 12652's sealing and

13

Nor does a qui tam plaintiff's lack of compliance with the CFCA's sealing and service requirements otherwise require dismissal. The United States Supreme Court addressed a similar issue with respect to the FFCA and concluded a violation of its sealing requirements does not require automatic dismissal.[6] (See *State Farm Fire and Cas. Co. v. U.S ex rel. Rigsby* (2016) 580 U.S. 26.) The high court explained, although the FFCA creates a mandatory sealing rule, its "structure is itself an indication that violating the seal requirement does not mandate dismissal. . . . [T]he [F]FCA has a number of provisions that do require, in express terms, the dismissal of a relator's action. [Citations.] It is proper to infer that, had Congress intended to require dismissal for a violation of the seal requirement, it would have said so." (*Id.* at pp. 33–34.) The court also reasoned that requiring automatic dismissal would be inconsistent with the general purpose of the FFCA. The court explained that the "seal provision was enacted in the 1980's as part of a set of

---

service requirements. Therefore, he has met his burden to show a "reasonable possibility that the defect can be cured by amendment." (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487; see *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746–747 [a plaintiff may show a reasonable possibility of amendment for the first time on appeal].)

[6] Because of the similarities between the CFCA and the FFCA, California courts interpreting the CFCA may seek guidance from federal cases interpreting the FFCA. (See *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1215 (*Wells*); *City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 802.)

reforms that were meant to 'encourage more private enforcement suits.' [Citation.] At the time, 'perhaps the most serious problem plaguing effective enforcement' of the [F]FCA was 'a lack of resources on the part of Federal enforcement agencies.' . . . Because the seal requirement was intended in main to protect the Government's interests, it would make little sense to adopt a rigid interpretation of the seal provision that prejudices the Government by depriving it of needed assistance from private parties." (*Id.* at pp. 34–35; see also *U.S. ex rel. Lujan v. Hughes Aircraft Co.* (9th Cir. 1995) 67 F.3d 242, 245 (*Lujan*) [the FFCA's sealing requirements "are not jurisdictional, and violation of those requirements does not per se require dismissal of the *qui tam* complaint"].)

The United States Supreme Court's reasoning applies equally to the CFCA's sealing and service requirements. Like the FFCA, the CFCA contains provisions expressly requiring dismissal of a qui tam action for reasons other than compliance with its sealing and service requirements. (See, e.g., § 12652, subd. (d)(3)(A) [a trial court "shall dismiss" a qui tam action if it arises out of facts publicly disclosed in other actions, governmental reports, or the news media].) The CFCA also contains provisions expressly conditioning a court's jurisdiction on a party's timely compliance with certain service rules. Specifically, section 12656 requires service on the Attorney General within three days of any CFCA-related filing made in an appellate court. (§ 12656, subd. (a).) The statute states "[t]imely compliance with the three-day time period is a jurisdictional prerequisite to the entry of judgment, order, or decision." (*Id.*, subd. (b).) That the Legislature did not include similar language regarding compliance with section 12652's

15

sealing and service requirements is a strong indication that it did not intend to create jurisdictional prerequisites or require automatic dismissal for violations.

      b.    *Relator had standing*

Defendants contend the trial court properly sustained the demurrer because Relator's failure to comply with section 12652's sealing and service requirements prevented him from obtaining standing to litigate the case. According to Defendants, a qui tam plaintiff's standing "is conditioned on the [government] first electing not to proceed with the case itself." They assert the government must "assign" its standing to the qui tam plaintiff, which requires an "unequivocal manifestation" of the government's intent to effectuate the assignment. Defendants suggest this occurs only when the government gives notice of its intent not to proceed with the action. Defendants contend that where the government either elects to proceed with the action or remains silent—as it did here—the qui tam plaintiff lacks standing.

"The prerequisites for standing to assert statutorily[-] based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute." (*Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th 456, 466.) Here, Relator had standing under the plain language of section 12652, which expressly authorizes a qui tam plaintiff to bring an action without any prior governmental approval. (See § 12652, subd. (c)(1).) Moreover, it authorizes the plaintiff to bring the action both "for the person" and for the government. (*Ibid*.) Thus, a qui tam plaintiff has "a personal stake in the action beyond her representative stake." (*Armenta ex rel. City of Burbank v. Mueller Co.* (2006) 142

16

Cal.App.4th 636, 642.) These provisions directly contradict Defendants' assertion that Relator's standing was conditioned on the government electing not to proceed with the case.

Defendants seem to suggest that, although Relator had standing to bring the action, he lacked standing to pursue it. Defendants cite no authority to support a distinction between a plaintiff's standing to bring an action and to pursue it. In any event, Defendants overlook the fact that section 12652 allows a qui tam plaintiff to continue as a "full party" with "unrestricted participation" in the case, even if the government elects to proceed with the action. (§ 12652, subds. (e)(1), (i).) The government may move to limit the plaintiff's participation under certain circumstances, but it may not remove the plaintiff as a party. (*Id.*, subd. (i).) Accordingly, Relator's standing—either to bring the action or to pursue it—did not depend on the government giving notice that it would not intervene in the case.

c. *Relator complied with section 12652's sealing and service requirements*

Defendants suggest the order dismissing the action was a proper exercise of the trial court's authority to sanction Relator for violating section 12652's sealing and service requirements. Trial courts have inherent power to impose sanctions—including terminating sanctions—on parties who fail to comply with section 12652's requirements. (See *Lujan, supra*, 67 F.3d at p. 245; *Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51 [California courts have "inherent power to issue a terminating sanction for 'pervasive misconduct' "].) Here, however, the record is clear that the trial court did not dismiss the action as a terminating sanction. Rather, it dismissed the action because

17

it sustained a demurrer without leave to amend, presumably for failure to state a cause of action.

Even if we were to construe the trial court's order sustaining the demurrer as a terminating sanction, we still would reverse. We review a trial court's imposition of terminating sanctions for an abuse of discretion. (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1292.) Where " 'the trial court's decision to issue sanctions depends on factual determinations, we review the record for substantial evidence to support those determinations.' " (*Tedesco v. White* (2023) 96 Cal.App.5th 1090, 1097.)

Federal courts balance three factors to determine whether dismissal is warranted when a qui tam plaintiff violates the FFCA's sealing requirements: (1) actual harm to the government; (2) severity of the violations; and (3) evidence of bad faith. (See *Lujan, supra*, 67 F.3d at pp. 245–246.) Even assuming those factors apply in state court cases involving the CFCA, we need not consider them because the record shows Relator complied with the CFCA's requirements. Accordingly, the trial court abused its discretion to the extent it dismissed the action as a sanction. (See *Conservatorship of Becerra* (2009) 175 Cal.App.4th 1474, 1481–1482 ["Absent a proper basis for [the court's factual] findings, a sanctions award represents a prejudicial abuse of discretion."].)

Defendants do not dispute that Relator filed the complaint in camera, served the Attorney General by mail with return receipt requested, and waited more than 60 days after filing the complaint to serve them.[7] (See § 12652, subd. (c)(2), (3).)

---

[7] In the trial court, Defendants speculated that Relator did not actually serve the Attorney General. Defendants seem

18

Nor do they dispute that the government did not seek to extend the seal beyond 60 days. Nevertheless, Defendants argue Relator violated section 12652 by lifting the seal prematurely and without authority. According to Defendants, a qui tam complaint remains under seal—and a qui tam plaintiff may not serve a defendant—until the government notifies the court of its decision whether to intervene. They argue Relator violated these requirements by serving them and litigating the case before the government notified the court whether it would intervene.

Section 12652, subdivision (c) contains three general provisions governing the length of time a qui tam complaint must remain under seal. First, paragraph (2) states a qui tam complaint "may remain under seal for up to 60 days." (See § 12652, subd. (c)(2).) Second, paragraphs (5), (7)(C), and (8)(C) state the government "may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal."[8] (*Id*., subd. (c)(5), (7)(C), (8)(C).) Third, paragraphs (6), (7)(D), and (8)(D) state the "seal shall be lifted" when the government provides notice of its decision whether to intervene. (*Id*., subd. (c)(6), (7)(D), (8)(D).)

The parties disagree about how these provisions operate where, as here, the government neither requests an extension

_____

to have abandoned that contention on appeal and for good reason. There is overwhelming evidence in the record that Relator served the Attorney General by mail with "return receipt requested," as required under section 12652, subdivision (c)(3).

[8]     Many provisions appear in three separate paragraphs of section 12652, subdivision (c). Which paragraph applies depends on whether the complaint involves only state funds, only local funds, or a combination of the two.

19

of the seal nor provides notice of its decision to intervene or not. Relator contends subdivision (c)(2) creates a default 60-day sealing period, after which the seal lifts automatically unless the government requests an extension.  Defendants contend the seal may be lifted only when the government gives notice under paragraphs (6), (7)(D), or (8)(D).  Therefore, they argue, the seal remains in place unless and until the government notifies the court of its decision whether to intervene, no matter when the government gives that notice.

Resolution of the parties' dispute requires us to interpret section 12652.  "The rules governing statutory construction are well settled.  We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent.  [Citations.]  To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning.  [Citations.]  When the language of a statute is clear, we need go no further.  However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) We presume the Legislature intended the entire statute to have effect, and we aim to avoid interpretations that render any part meaningless. (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838; *People v. Arias* (2008) 45 Cal.4th 169, 180.)  Where reasonably possible, we must harmonize statutes and reconcile seeming inconsistencies within them. (*Even*, at p. 838.)

Relator's interpretation is consistent with subdivision 12652, subdivision (c)'s plain language and gives effect to every relevant paragraph within it. Under his interpretation, paragraph (2)—which states the qui tam complaint may remain under seal for "up to 60 days" (§ 12652, subd. (c)(2))—creates a 60-day default period under which the complaint must remain under seal. Paragraphs (6), (7)(D), and (8)(D) allow the seal to be lifted before 60 days if the government gives notice of its decision to intervene within that time. Paragraphs (5), (7)(C), and (8)(C) allow the court to extend the seal beyond 60 days, but only if the government shows good cause for the extension.[9] Where, as here, the government neither gives notice nor moves for an extension, the default 60-day period applies. After 60 days, the seal is lifted automatically and the qui tam plaintiff may serve the defendant.

Defendants' interpretation, in contrast, renders superfluous subdivision (c)(2)'s mandate that a qui tam complaint remain under seal "for up to 60 days." (§ 12652, subd. (c)(2).) Defendants do not even acknowledge that language, let alone explain what effect it has under their interpretation. Defendants' interpretation also would undermine the provisions requiring the government to show "good cause" to extend the seal. (See § 12652, subd. (c)(5), (7)(C), (8)(C).) Under their interpretation, the seal would extend beyond 60 days automatically if the government simply remained silent. However, if the government requested an extension of the seal—as the statute expressly

---

[9] Under the California Rules of Court, the default period also is extended while the government's motion is pending. (See Cal. Rules of Court, rule 2.573(a)(2).)

21

requires it to do—it would need to show good cause. We doubt the Legislature intended to create such incentives.[10]

Even assuming the statutory language were ambiguous—and that both interpretations were viable—the relevant extrinsic aides weigh in favor of Relator's interpretation. The Legislature's overriding purpose for enacting the CFCA was " ' "to prevent fraud on the public treasury" ' " by supplementing " 'governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities.' " (*San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal.App.4th 438, 446.) It included the qui tam provisions, in particular, to encourage private enforcement of the CFCA. (See *U.S. ex rel. Pilon v. Martin Marietta Corp.* (2d Cir. 1995) 60 F.3d 995, 998; *Wells, supra*, 39 Cal.4th at p. 1215 [looking to *Pilon* to determine the purpose of the CFCA's seal requirement].) The CFCA " ' "should be given the broadest possible construction consistent" ' " with its purpose. (*Contreras*, at p. 446.)

Relator's interpretation promotes the CFCA's purpose by allowing private persons to enforce its provisions in the face of governmental inaction. Indeed, it would seem private enforcement of CFCA claims is particularly needed where—as here—the government completely neglects its statutory

_____

[10] It is possible the government's failure to respond within 60 days would prevent it from intervening and taking control of the action. In that case, the government still would have an incentive to move to extend the seal, rather than remain silent. However, where the government does not intend to intervene, Defendants' interpretation would allow it to extend the seal indefinitely without consequence.

22

obligations. Defendants' interpretation, in contrast, would allow governmental negligence to place an indefinite hold on the enforcement of the CFCA, frustrating the goal of combating fraud on the public treasury.

Defendants suggest Relator's interpretation undermines the purpose of the seal requirement, which is to ensure a "qui tam action does not alert wrongdoers, prior to intervention by the government, that they are under investigation." (*Wells, supra*, 39 Cal.4th at p. 1215.) We disagree. The government's need for secrecy is in conflict with the Legislature's goal of encouraging private enforcement of the CFCA. The Legislature balanced those competing interests by requiring qui tam plaintiffs to file their complaints in camera, but limiting the length of time the complaints may remain under seal absent good cause. Relator's interpretation respects that balance by giving teeth to the CFCA's statutory deadlines. Defendants' interpretation undermines it by allowing a complaint to remain under seal indefinitely without good cause.

Moreover, a comparison with the FFCA suggests the Legislature prioritized private enforcement above other competing interests. The FFCA and CFCA both require a qui tam plaintiff to file the complaint under seal. However, they differ on the length of time the complaint must remain under seal and the procedures to serve the defendant. The FFCA states a qui tam complaint "shall remain under seal for *at least* 60 days, and shall not be served on the defendant until the court so orders." (31 U.S.C. § 3730(b)(2), italics added.) The CFCA, in contrast, states the complaint may remain under seal for "*up to* 60 days," and it does not require a court order to serve the defendant once the seal is lifted. (§ 12652, subd. (c)(2), italics

23

added.)  The Legislature also added to the original version of the CFCA a mandate that, "in no event may the complaint remain under seal for longer than 90 days," even if the government has good cause for an extension.  (Stats. 1987, ch. 1420, § 1.)[11]  Each of these changes reflects a legislative intent to prioritize private enforcement over the government's need for secrecy.[12]  Relator's interpretation is more consistent with that intent.

There is no merit to Defendants' contention that Relator's interpretation would undermine the government's rights under the CFCA.  Under Relator's interpretation, a qui tam plaintiff still is required to serve the Attorney General, and the government still has 60 days to intervene or request an extension.  If the government does not act in that time, it is reasonable to infer it does not want to intervene and does not have good cause to extend the seal.  Moreover, even when the government fails to act within 60 days, it is not completely without recourse.  Section 12652, subdivision (f) allows the government to move to intervene "in an action with which it had initially declined to proceed if the interest of the [government] in recovery of the property or funds involved is not being adequately represented by the qui tam plaintiff."  (§ 12652, subd. (f)(2)(A).)

The trial court suggested Relator should have taken steps to ensure the government complied with its statutory

---

[11]    The Legislature amended the CFCA in 1996 to remove the 90-day limitation.  (See Stats. 1996, ch. 700, § 1.)

[12]    The qui tam provisions of the Insurance Frauds Prevention Act mirror those in the FFCA.  (See Ins. Code, § 1871.7, subd. (e)(2).)  This suggests the deviations in the CFCA were intentional.

obligations.[13]  The CFCA's legislative history, however, suggests the Legislature sought to minimize the procedural burdens on qui tam plaintiffs.  For example, an early draft of the legislation did not specify the means by which qui tam plaintiffs must serve the Attorney General.  A committee report noted the legislation as written presumably would require personal service, which it suggested would be "an unreasonable burden to impose on a plaintiff, particularly in view of the fact that the [Attorney General] is not a party to the action."  (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 1441 (1987–1988 Reg. Sess.) Apr. 29, 1987, p. 5.)  The Senate subsequently amended the bill to make clear that service need only be by mail with return receipt requested.

The Legislature's intent to minimize the procedural hurdles on qui tam plaintiffs also is reflected in its decision not to require service on local prosecuting authorities, even if no state funds are involved.  (§ 12652, subd. (c)(3).)  Instead, the Attorney General must determine whether local prosecuting authorities have an interest in the case and provide notice to them.  (*Id*., subd. (c)(7)(A), (8)(A).)  This allocation of responsibility suggests the Legislature wanted to minimize the burdens on qui tam plaintiffs, presumably to encourage private enforcement.  Relator's interpretation is consistent with that intent, as it incentivizes the government to act diligently without placing any additional burdens on qui tam plaintiffs.

---

[13]     It is not entirely clear what a qui tam plaintiff could do to force the government to act, as the CFCA does not provide qui tam plaintiffs any express enforcement mechanisms.  Perhaps a qui tam plaintiff could apply for an injunction compelling the government to give notice of its decision.

Defendants suggest the seal must remain in place until the government acts in order to prevent reputational damage to defendants "should the allegations prove specious." According to Defendants, once the seal is lifted and the case becomes a matter of public record, any reputational damage cannot be undone. Defendants also suggest the seal must remain in place to facilitate settlement or dismissal by the government. They assert the "dynamics of such negotiations" are "dramatically altered" once the seal is lifted.

Defendants point to nothing in the CFCA's text or its legislative history even to suggest the Legislature imposed the seal requirement to protect a defendant's reputation. Moreover, their arguments rely on the faulty assumption that the government may unilaterally dismiss or settle a qui tam action while the complaint remains under seal. To dismiss or settle a case, the government first must elect to proceed with the action by giving notice, at which point the "seal shall be lifted." (See § 12652, subds. (c)(6)(A), (7)(D)(i), (8)(D)(i), (e)(2).) The qui tam plaintiff then has the right to object and present evidence to the court before it may approve a settlement or dismiss the case. (*Id*., subd. (e)(2).)

Defendants contend the California Rules of Court support their interpretation. Specifically, they point to rule 2.573(a)(1), which states, "Records in a False Claims Act case to which public access has been prohibited under Government Code section 12652(c) must remain under seal until the Attorney General and all local prosecuting authorities involved in the action have notified the court of their decision to intervene or not intervene." (Cal. Rules of Court, rule 2.573(a)(1).) According to Defendants,

26

this rule requires that all records in a CFCA case remain sealed indefinitely until the government gives notice.

At the outset, where there is a conflict between a statute and a rule of court, the statute controls. (See *Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 364 ["if a statute even implicitly or inferentially reflects a legislative choice to require a particular procedure, a rule of court may not deviate from that procedure"].) Nevertheless, when possible, we must construe the Rules of Court "in a manner that maintains their consistency with statutory or constitutional requirements." (*Id.* at p. 365.)

Here, it is possible to construe California Rules of Court, rule 2.573(a)(1) in a manner consistent with Relator's interpretation of section 12652. By its plain language, rule 2.573(a)(1) applies only to records "to which public access has been prohibited under Government Code section 12652(c)." (*Ibid.*) As we discussed above, section 12652, subdivision (c) reflects a legislative choice that a CFCA complaint may remain under seal for no more than 60 days absent a court order extending that time. Indeed, any contrary interpretation would render superfluous subdivision (c)(2)'s mandate that a complaint "may remain under seal for up to 60 days." (§ 12652, subd. (c)(2).) Where, as here, 60 days have passed without an order extending the seal, section 12652, subdivision (c) no longer prohibits public access to the complaint. At that point, rule 2.573(a)(1) does not apply.

Defendants' reliance on *State of California ex rel. Sills v. Gharib-Danesh* (2023) 88 Cal.App.5th 824 is misplaced. Defendants point to a passage in *Sills* stating, "Only when the relevant government agency notifies the court of its decision

27

regarding whether it will intervene in the action can the seal be lifted. And only when the court lifts the seal in connection with this intervention decision can the summons and complaint be served on the defendant(s) and litigation of the action begin. Prior to that time, the qui tam plaintiff is not allowed to take any steps to prosecute the case." (*Id*. at pp. 832–833.) As Defendants seem to acknowledge, the court's assertion that the seal can be lifted only when the government gives notice is dicta. The government in *Sills* sought and obtained extensions of the seal beyond 60 days. (See *id*. at pp. 837–838.) Therefore, the court did not need to decide if a seal lifts automatically when the government fails to request an extension within 60 days. It is "axiomatic" that cases are not authority for propositions not considered and decided. (*Sandhu v. Board of Administration etc.* (2025) 108 Cal.App.5th 1048, 1068.)

We also reject Defendants' passing contention that a court must order the seal lifted on a qui tam complaint. The Legislature used the passive voice in each provision concerning the lifting of the seal, suggesting it intended the seal would lift automatically, without a court order. (See, e.g., § 12652, subd. (c)(6), (7)(D), (8)(D) [stating "the seal shall be lifted"].) Defendants point to nothing in the statutory text or the legislative history to suggest otherwise. The Judicial Council seems to agree with our interpretation, as they included on form CM-011 a box requiring the filing party to write the date on which the "seal [is] to expire" unless a "[m]otion to extend time is pending" or the seal is "[e]xtended by court order." The inclusion of that box would not make sense if a court must order the seal lifted, as Defendants contend.

28

Applying Relator's interpretation to the record before us, the only reasonable conclusion is that Relator complied with section 12652's sealing and service requirements. The undisputed evidence shows he filed the complaint in camera, set the seal to expire in 60 days, served the Attorney General by mail, return receipt requested, and waited more than 60 days to serve Defendants. Because the government did not move to extend the seal, the seal lifted automatically after 60 days. Therefore, by waiting more than 60 days to serve Defendants, Relator complied with the requirement that "[n]o service shall be made on the defendant until after the complaint is unsealed." (§ 12652, subd. (c)(2).) Accordingly, he complied with all the requirements for sealing and service found in section 12652, subdivision (c). The trial court erred to the extent it concluded otherwise.[14]

---

[14] Because we conclude the trial court erred by sustaining the demurrer, Relator's arguments related to his motion for new trial are moot. Accordingly, we need not consider them.

29

**DISPOSITION**

We reverse the judgment, including the award of costs to Defendants.  On remand, the trial court shall vacate its order sustaining the demurrer and enter an order overruling it. Jamal Albarghouti shall recover his costs on appeal.


EGERTON, J.

We concur:


EDMON, P. J.


HANASONO, J.

Filed 4/2/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMAL ALBARGHOUTI, | B333058 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 22STCV17774 |
| v. | |
| LA GATEWAY PARTNERS, LLC, et al., | |
| Defendants and Respondents. | |

THE COURT:

The opinion in the above-entitled matter, filed on March 24, 2026, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

There is no change in the judgment.

_____

EGERTON, J.                EDMON, P. J.                HANASONO, J.